RAY SEWER, Plaintiff

v.

**PARAGON HOMES, INC., PARAGON ISLANDS HOMES, INC., DANIEL GREENHAUFF and PETER B. NALEN,**
Defendants

Civil No. 364-1972

District Court of the Virgin Islands

Div. of St. Croix

December 7, 1972

290

HODGE, SHEEN & FINCH, Christiansted, St. Croix, V.I., *for plaintiff*

CORNEIRO, GIBBS & SELKE, Charlotte Amalie, St. Thomas, V.I., and GAMAL & ROSSKOPF, St. Croix, V.I., *for defendants*

YOUNG, *Judge*

#### MEMORANDUM OPINION AND ORDER

██ ██ The defendants in this case have moved for an Order to stay all legal proceedings pending arbitration

of their dispute. This motion thus presents the question whether the Federal Arbitration Act ("the Act") is applicable to the Virgin Islands. Although the contract upon which suit is brought does contain an arbitration clause, plaintiff opposes the motion and prefers to pursue his legal remedies in lieu of arbitration. If local law were to control, he would be able to do this. Arbitration clauses are not specifically enforceable in the Virgin Islands. On the other hand, the Act does make such clauses specifically enforceable. Hence, if it were to control all local actions brought in this court, then defendants' motion must be granted. For the reasons set forth below, I hold that the Act does apply to actions in the District Court of the Virgin Islands. Further proceedings in this action will therefore be stayed pending recourse to the arbitration procedures provided for in the contract between the parties.

This case arose out of a distributorship contract. The principal defendant, Paragon Homes, Inc. ("Paragon") is a manufacturer of prefabricated houses. In 1967 plaintiff ("Sewer") entered into a contract with Paragon Homes, pursuant to which he would become its exclusive distributor and franchised dealer for St. Croix. That relationship is no longer in effect, although the circumstances of its termination are a matter of dispute. Sewer charges a conspiracy among defendants by which the distributorship was unjustifiably transferred to other hands. Paragon has answered and counterclaimed, alleging that Sewer was lackadaisical in the discharge of his duties as their agent. Paragon now moves for a stay, invoking the general arbitration clause of the contract, which provides as follows:

In the event of any dispute or disagreement of any nature whatsoever concerning this Agreement, including but not limited to the terms of the Agreement, the performance thereof, the breach thereof, or its interpretation, the same shall be arbitrated by the American Arbitration Association in the County of Nassau,

State of New York, the jurisdiction of which Association and the enforcement of its orders, both parties do hereby consent. In the event of such arbitration, the costs shall be borne equally between the parties.

## I.

Whether the arbitration clause may be enforced, however, depends on whether the Federal Arbitration Act applies to actions in this Court. If it does not, then local law will control. The Legislature of the Virgin Islands has not enacted an arbitration statute. In the absence of a statute, actions under local law are to be governed by the Restatements approved by the American Law Institute. 1 V.I.C. § 4. The Restatement of Contracts provides that while arbitration clauses are not illegal, neither are they specifically enforceable, and only nominal damages will be awarded for their breach. The Restatement of Contracts § 550 (1932); Sigal v. Three K's Ltd. 8 V.I. 464 (3rd Cir. 1972).

Congress was evidently dissatisfied with this posture of the common law, and believed that enforceable arbitration agreements would more justly carry out the undertakings of the contracting parties and could prevent considerable unnecessary litigation. Congress therefore passed the Arbitration Act of 1925, 9 U.S.C. §§ 1–14 (1970). Section 2 of the Act provides that, in contracts covering transactions within federal cognizance, arbitration clauses shall be valid and enforceable.[1] Section 3 provides that where an issue is referable to arbitration, a court shall stay its own proceedings "until such arbitration has been had in

---

[1] 9 U.S.C. § 2 (1970)—

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

accordance with the terms of the agreement. . . ."[2] So far as I am advised, the application of the latter section to this court is an issue of first impression.

■ For three reasons, I hold that the Arbitration Act applies to mandate stays of legal proceedings conducted in the District Court of the Virgin Islands. First, there is a strong federal policy in favor of arbitration, and Congress should be understood as extending this policy to all areas within its purview. Secondly, this is a "court of the United States" for purposes of the Act, and hence the Act applies in terms. And finally, the case law from other territories has tended to arrive at this same conclusion.

■■ Congressional policy strongly favors arbitration. In recognition of this fact, a very large number of cases have held that doubts or ambiguities in the statute should be resolved in favor of arbitration. See, e.g., Kanazawa Ltd. v. Sound, Unlimited, 440 F.2d 1239 (9th Cir. 1971); Lundgren v. Freeman, 307 F.2d 104, 109–10 (9th Cir. 1962); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2nd Cir. 1959), cert. dismissed, 364 U.S. 801. The principal limitation placed upon this construction is that the underlying transaction must come within the reach of the substantive lawmaking powers of Congress. Thus, for example, it has been held that in a diversity case the Act must be construed as reaching only a contract relating to a maritime or interstate commerce transaction. Bernhardt v. Polygraphic Co., 350 U.S. 198 (1956). To hold otherwise would create Erie problems by

---

[2] This section is the basis for the present motion, and provides as follows (9 U.S.C. § 3 (1970)):

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until the arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such application.

introducing an outcome-determinative federal procedure into a class of suits that are to be governed by state law. No such problems, however, are raised by the case. In the first place, since the houses were to be manufactured in New York and sold in the Virgin Islands, this particular transaction amply affects interstate commerce and hence comes within the federal regulatory powers. Cf. Hilti, Inc. v. Oldach, 392 F.2d 368, 371 n. 6 (1st Cir. 1968). Of more general importance, however, is the fact that Congress has the authority to regulate *all* transactions within the territories. It has evidently chosen to do so here, and to extend the coverage of the Act to all areas within its legislative competence. Section 1 provides that " 'commerce', as herein defined, means commerce . . . in any territory of the United States . . . ." 9 U.S.C. § 1 (1970). Since the usual jurisdictional constraints are thus inapplicable here, we should feel free to apply the standard rule for construction of the Act and resolve any further ambiguities in favor of arbitration.

 The foregoing policy considerations are supported by the language of the Act itself. Section 3, providing for stays of court actions, applies in terms to "any of the courts of the United States". I construe this language, in the context of this Act, as embracing the District Court of the Virgin Islands. It is true that this is not an Article III court, and legislation addressed to "the district courts of the United States" has been consistently held inapplicable here. See, e.g., Government v. Bell, 392 F.2d 207 (3rd Cir. 1968); Ferguson v. Kwik-Check Winn-Dixie Stores, Inc., 7 V.I. 639 (D.V.I. 1970); Callwood v. Callwood, 127 F.Supp. 179, 3 V.I. 61 (D.V.I. 1954). However, the phrase "district courts" is a term of art, and I believe that "courts of the United States" has a different and more inclusive meaning. The Supreme Court has noted that the term "district court of the United States" has an

296

"historic significance" as denoting "the constitutional courts created under Article III. . . ." Mookini v. United States, 303 U.S. 201, 205 (1938) (Hughes, C.J.). If this is the "historic and proper sense" of this term, id., then the phrase "courts of the United States" would seem the most useful and logical term of distinction. The latter phrase has a connotation of greater breadth, of reaching all elements of the judiciary which are established pursuant to federal authority. It is therefore my opinion that, as a general rule of construction,[3] federal statutes directed to "courts of the United States" should be taken as applying to this court. In the context of this particular case there is also collateral evidence supporting such a use of the term. Since Congress has made the Act applicable to transactions taking place entirely within a territory, it is most reasonable that the federal court for that territory be empowered to hear cases arising under it.[4]

So far as I can ascertain, this usage is consistent with prior decisions in this jurisdiction. The Circuit Court opinion in Sigal v. Three K's Ltd., supra, is not to the contrary. That action originated in the Municipal Court, and the Third Circuit held only that the Federal Arbitration Act "is not by its terms applicable [there]." If this limited phraseology suggests any affirmative proposition, it is that a different result would follow where an action originates in the District Court, which is a court of the United States. Considering this court in those terms was to some extent foreomened in Fergu-

---

[3] While I think the distinctions between the two terms of art is a real one, it is nonetheless relatively obscure and might not always be taken into consideration by Congress. It should therefore not be relied upon in the face of other circumstances which make it clear that Congress intended a contrary meaning.

[4] It should be noted that while section 3 is addressed to "courts of the United States", section 4—empowering the issuance of orders compelling arbitration—is limited to "any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . ." 9 U.S.C. § 4 (1970). This might at first appear to invoke the very distinction discussed

son v. Kwik-Chek Winn-Dixie Stores, Inc., 7 V.I. 639, 643 (D.C.V.I. 1970). Although that case dealt with a procedural question, the decision was grounded on the broader philosophical commitment that, wherever feasible, this court is to be considered an integral part of the federal judicial system. In accordance with that philosophy, the Arbitration Act was tacitly found applicable to the District Court of the Virgin Islands in the recent matter of In re Arbitration of Hydromechanics Corp. (Civil No. 169-1970, Div. of St. Thomas & St. John). An order in that case, issued without opinion, appointed a third arbitrator pursuant to section 5 of the Act.

Finally, I should mention that where other territories have had occasion to consider this question, they have also tended to conclude that the Arbitration Act applies to actions in their federal courts. The First Circuit has implicitly reached this conclusion for Puerto Rico, and

above, but in fact I do not think it should be taken as withdrawing section 4 powers from this court. The Act should be construed as a whole. It would make little sense for this court to be required to stay its own proceedings pending arbitration, but then be unable to compel the arbitration itself. This wording illustrates the terms of art relating to territorial-court jurisdiction are not always well understood by Congress and I think a different meaning was in fact intended. The clause in section 4 is best read as underscoring the fact that the Act itself confers no jurisdiction and that it applies only to actions which are otherwise properly brought before a federal court. Wording to this effect is appropriate in section 4, since an action for an order compelling arbitration may be pursued as an original matter. Courts must be aware of the limits on their jurisdiction. In section 3 stays, on the other hand, the matter is already before the court. Hence the caveat need not be considered at that time. I conceive this to be the reason for the different wording. I do not believe that Congress intended section 4 to be enforceable in fewer courts than section 3. A similar conclusion was reached by the Ninth Circuit in relation to the District Court of Guam. See Kanazawa Ltd. v. Sound, Unlimited, 440 F.2d 1239 (9th Cir. 1971) (semble).

However, in the event that I am mistaken in this analysis, it will still not affect the disposition of this action under section 3. The two sections afford independent, albeit mutually supporting, remedies. Cf. Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978 (2nd Cir. 1942). For example, it has been held that denial of a stay under section 3 does not preclude a subsequent action under section 4 to enforce arbitration. See In re Pahlberg Petition, 131 F.2d 968 (2nd Cir. 1942); Petition of American Locomotive Co., 87 F.Supp. 754 (D.C. Mich. 1949), aff'd, 185 F.2d 316.

rested the decision in Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968) on the proper construction of the Act as applied to the facts of that case. The Fifth Circuit admittedly came to the opposite conclusion and held the Act inapplicable to the Canal Zone, reasoning that the district court there was not a constitutional court established under Title 28 and hence not a "court of the United States". Jos. L. Muscarelle, Inc. v. American Timber & Trading Co., 404 F.2d 467 (5th Cir. 1968). With deference, however, I must disagree, for the reasons set forth above, with that decision of the Circuit Court of Appeals for the Fifth Circuit. Moreover, I am persuaded and influenced by the decision of the Ninth Circuit holding the Act applicable to the District Court of Guam. See Kanazawa Ltd. v. Sound, Unlimited, 440 F.2d 1239 (9th Cir. 1971). Kanazawa was bottomed on the belief that Congress strongly favored arbitration and legislated to assure that it would be enforceable in all areas within its purview. One piece of the Kanazawa opinion serves as evidence in support of this belief and is of especial persuasive value:

When Congress declared Guam to be an unincorporated territory, provision was made for a commission to survey federal statutes and to make recommendations to Congress as to which federal statutes should be made applicable to Guam. See 48 U.S.C. § 1421c (b) (repealed Pub. L. 90–497, 82 Stat. 847 (1968)). The Commission reported Title 9, U.S.C. was, by its terms, applicable to Guam and recommended it should remain so. Report of the Commission on the Application of Federal Laws to Guam, House Doc. No. 212, 82nd Cong., 1st Sess., at 16. We think it significant that Congress has not acted to amend the Arbitration Act after the Commission, for which Congress itself provided, concluded that the Act did apply to Guam. Id. at p. 1240.

I am inclined to give this evidence weight in the present case as well, for I cannot believe that the Virgin Islands are any more insular in this respect than Guam.

## II.

Plaintiff contends that, even if the Act were generally applicable to the Virgin Islands, it cannot properly be invoked on the facts of the case sub judice. A number of arguments have been advanced to this effect. However, I am unable to agree with them.

Initially, plaintiff relies on the two cases of Bernhardt v. Polygraphic Co., 350 U.S. 198 (1956) and American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115 (6th Cir. 1948). These cases are nonetheless distinguishable from the present one. Bernhardt overturned the use of the Act in a diversity action for which there was no other basis for federal jurisdiction. In that circumstance it is, under Erie, improper to oust the local substantive law; but here, as we have seen, the present action comes within federal subject-matter jurisdiction in a number of respects. American Locomotive is distinguishable in that it is primarily a waiver case, based in part on a long delay before asserting the right to arbitration. A similar waiver could not justifiably be implied here.

 Plaintiff next points out that his complaint includes a count sounding in tort. He urges that since this claim must be resolved by a court in any event, the entire litigation should be retained here in order to prevent duplication of suits. It is true that courts do not generally require both an arbitration and a court trial on two separate claims, see Miletic v. Holm & Wonsild, 294 F.Supp. 772 (S.D.N.Y. 1968); and trial courts have been permitted to consolidate such claims in the legal forum, see J. Dunn & Sons, Inc. v. Paragon Homes of New England, 265 A.2d 5 (S.Ct. N.H. 1970). The latter case, however, seems best understood as upholding a discretionary power in the trial judge, rather than expressing any preference for this resolution. For two reasons I do not believe that such consolidation would be appropriate here. First, it is by no

300

means clear that two separate trials must otherwise result. The tort claims here are so closely related to contractual issues that they might readily be settled after the latter have been arbitrated. Moreover, it seems unsound as a general policy to permit the addition of a tort count to lock the dispute in the courts. A party desiring to avoid arbitration could then add a tort count to any complaint and frustrate the purposes of the Act altogether. Cf. Hilti, Inc. v. Oldach, 392 F.2d 368, 369 & n. 2 (1st Cir. 1968).

 Two further contentions may be disposed of with some brevity. First, it cannot be said that an enforceable arbitration agreement will "divest an otherwise proper forum of its jurisdiction". This court has asserted and retains jurisdiction over the subject matter in this case, and is simply staying its proceedings until the exhaustion of whatever contractual remedies are appropriate. Secondly, I cannot find that an agreement to arbitrate in New York poses unconscionable difficulties. While the parties are thus to utilize a forum and rules of decision different from those they would have had if the matter had been litigated here, this is the sort of business arrangement that is fairly left to the contracting parties. Its burdens are not excessive.

 Finally, plaintiff urges that the arbitration clause in this particular contract is, in some sense, a sham which does not merit specific enforcement. More particularly, he points to an "inconsistency" between that clause and section 15(B) of the contract, which permits Paragon summarily to terminate the agreement if it felt that Sewer had failed to comply with "any terms or conditions" therein. Sewer argues with force and some persuasiveness that Paragon's reservation of this power is inconsistent with its present insistence on the beauties of arbitration. Ultimately, however, I must again disagree. Section 15(B) is susceptible to two interpretations, both of which

would be acceptable contractual terms. First, it could mean that Paragon could immediately terminate the relationship for reasons of business celerity, but that Sewer could plead compliance with the contract and possibly gain reinstatement at the arbitration hearing. Secondly, it could mean that arbitration will be limited to such collateral matters as the amount of compensation owed. Even in the latter event section 15 (B) would be consistent with the arbitration clause, since arbitration is an interstitial remedy and does not preclude use of specific termination powers as well. Admittedly, under this latter reading Paragon would have had greater discretionary powers than Sewer did, but this is simply to say that Sewer signed a disadvantageous contract. In any case, the proper construction of section 15 (B) will be a matter to be determined in the arbitration proceedings, in deference to which further actions in this court will be stayed. Jurisdiction will be retained, however, to deal with any aspects of this litigation which are not disposed of there.

### ORDER

For the reasons set forth in the Memorandum Opinion of even date herewith, the motion for a stay pending arbitration is hereby GRANTED.