**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Angel DIAZ, Defendant-Appellant.**

**No. 923, Docket 82–1377.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 22, 1983.

Decided July 13, 1983.

Richard N. Palmer, Asst. U.S. Atty., D. Conn., Hartford, Conn. (Alän H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., of counsel), for plaintiff-appellee.

Thomas G. Dennis, Federal Public Defender, Hartford, Conn., for defendant-appellant.

Before PIERCE, WINTER and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Once again we are confronted with a problem of interpreting 18 U.S.C.App. § 1202 (1976), a hastily enacted statute, *see Lewis v. United States,* 445 U.S. 55, 62–63, 100 S.Ct. 915, 919 (1980); *Scarborough v. United States,* 431 U.S. 563, 567, 97 S.Ct. 1963, 1965, 52 L.Ed.2d 582 (1977); *United States v. Bass,* 404 U.S. 336, 344, 92 S.Ct. 515, 520, 30 L.Ed.2d 488 (1971), which we have characterized as having a "most unedifying and inadequate legislative history." *United States v. Bass,* 434 F.2d 1296, 1298 (2d Cir.1970), aff'd, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). This time the question is whether a court of the Commonwealth of Puerto Rico is a court of a "State" or "of the United States" within the meaning of § 1202. Holding that it is, the district court entered a judgment of conviction against Angel Diaz. We disagree, and reverse and remand with a direction to dismiss the indictment.

Diaz was convicted after a jury trial based on a one-count superseding indictment that charged him with violating 18 U.S.C.App. § 1202(a)(1) for possessing a firearm "having been convicted by a court of the United States or of a state or a political subdivision thereof of a felony". Diaz stipulated that he had been convicted of a felony in the Superior Court of San Juan, Puerto Rico, but argued in a pre-trial motion that because Puerto Rico is not a "State" within the meaning of § 1202(a)(1), his conviction in that court could not serve as a predicate for the prosecution. Finding "no reason to make a distinction between Puerto Rico and any of the 50 states for purposes of construing this statute," the district court denied the motion.

On appeal, Diaz again claims that a conviction in a Puerto Rican commonwealth court cannot serve as a predicate conviction under § 1202(a)(1). He also claims errors in the denials of motions to suppress the handgun seized at the time of his arrest, as well as statements made to government agents while in custody. Because we hold that a Puerto Rican conviction cannot serve as a predicate under the statute, we do not consider the suppression issues.

As in any case of statutory interpretation, our "starting point" must be the language of the statute itself. *Lewis v. United States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). 18 U.S.C.App. § 1202 states:

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony

. . .

and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

By its terms, this section applies only to a person who has been convicted of a felony by either a "court of the United States" or by a court of a "State or any political subdivision thereof."

The government first argues that because Puerto Rico has "become a State within a common and accepted meaning of the word," *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 672, 94 S.Ct. 2080, 2086, 40 L.Ed.2d 452 (1974), *quoting Mora v. Mejias,* 206 F.2d 377, 387 (1st Cir.1953), we should view the superior court in Puerto Rico as a state court within the meaning of § 1202(a)(1). Puerto Rico has not been admitted formally as a state of the United States under U.S. Const. art. IV, § 3, cl. 1. After its cession by Spain in 1898, Puerto Rico was an unincorporated territory of the United States until 1952 when it became a commonwealth governed by a constitution adopted pursuant to a compact with the United States, *see* 48 U.S.C. §§ 731b *et seq.* (1976). The Superior Court of Puerto Rico was established by the Puerto Rican legislative assembly pursuant to that constitution. *See* P.R. Const. art. V., § 2. *See also* P.R.Laws Ann. tit. IV, § 61 (1978). Therefore, the Superior Court of Puerto Rico is a court of the commonwealth and not of a "State or any political subdivision thereof." Nor is the Superior Court a "court of the United States," at least as that term refers to

courts created pursuant to Article III or Article I of the United States Constitution. *See Sewer v. Paragon Homes, Inc.,* 351 F.Supp. 596, 599 (D.V.I.1972).

The government argues, however, that we should read the term "court of the United States" in § 1202(a)(1) in light of 18 U.S.C. § 5, which provides,

> The term "United States", as used in this title *in a territorial sense,* includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone (emphasis added).

The government argues that since Puerto Rico is within the territorial jurisdiction of the United States, § 5 includes the Superior Court of Puerto Rico as a "court of the United States" within § 1202(a). *See United States v. Taitano,* 442 F.2d 467, 469 (9th Cir.), *cert. denied,* 404 U.S. 852, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971) ("laws of the state . . . or of the United States" in 18 U.S.C. § 1952 includes laws of Guam by reason of 18 U.S.C. § 5). *See also United States v. Steele,* 685 F.2d 793, 805 (3d Cir.), *cert. denied sub nom. Twombly, Inc. v. United States,* —— U.S. ——, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982) (Puerto Rican statutes are laws of a state within meaning of 18 U.S.C. § 1952).

The district court rejected this argument, however, reasoning that if it were to read the term "court of the United States" in such a territorial sense, the remaining words of § 1202(a)(1) would be redundant, since all courts—federal, state, municipal, or commonwealth—within the territorial jurisdiction of the United States would be included in that term, and there would be no need for the additional reference to a court of a "State or any political subdivision thereof." We agree with the district court on this issue and hold that the term "court of the United States" in § 1202(a)(1) does not include the Superior Court of Puerto Rico by reason of 18 U.S.C. § 5.

The government next urges us to include Puerto Rico in the statute as a "State" by reading § 1202(a)(1) expansively in light of Congress's purpose "broadly to keep fire-arms away from the persons Congress classified as potentially irresponsible and dangerous." *Lewis v. United States,* 445 U.S. at 64–65, 100 S.Ct. at 920, *quoting Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). *See also Scarborough v. United States,* 431 U.S. at 572, 97 S.Ct. at 1967. Sections 1201–1203, known as Title VII, were introduced as a last-minute amendment to the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197. There was no committee study or report of Title VII; its entire legislative history is contained in the floor debates, reported in the Congressional Record. As we noted on an earlier occasion:

> Sections 1201 and 1202 of Title 18 U.S.C. (Appendix) were enacted as part of the Omnibus Crime Control and Safe Streets Act. After extended debate on numerous controversial issues, these two sections, known collectively as Title VII, were introduced on the floor by Senator Long. He twice set forth the purpose of the Amendment. 114 Cong.Rec. 13,867–69, 14,722–75, 90th Cong., 2d Sess. (1968). After his second speech, there was some brief debate; the few thoughts that were expressed seemed to favor the amendment in principle, but there appeared to be a desire for further study. Unexpectedly, however, a vote was called for, and Title VII passed with *no further discussion, and no amendment.*

*United States v. Bass,* 434 F.2d 1296, 1298 (2d Cir.1970), *aff'd* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). *See also Stevens v. United States,* 440 F.2d 144, 152–66 (6th Cir.1971) (setting out in appendix entire record of floor debate).

While we agree that the meager legislative history to Title VII does reflect an "expansive legislative approach" to the problem of firearm abuse by felons, *see Lewis v. United States,* 445 U.S. at 60–61, 100 S.Ct. at 918 ("The statutory language is sweeping . . ."), evidence of Congress's broad concern with a specific problem does not help resolve the narrower question of whether Congress intended this statute to

apply to persons convicted in a commonwealth court in Puerto Rico. On this specific point, the legislative history is completely silent.

We do note, however, that in numerous other statutes when Congress has intended the term state to apply to Puerto Rico, it has done so explicitly and expressly. *See, e.g.*, 15 U.S.C. § 1171(b) (1976) (transportation of gambling devices); 16 U.S.C. § 3371(h) (transportation of illegally taken wildlife); 18 U.S.C. § 891(8) (1976) (extortionate credit transactions); 18 U.S.C. § 921(a)(2) (jurisdictional requirement for firearms violation); 18 U.S.C. § 1953(d)(1) (1976) (interstate transportation of wagering paraphernalia); 18 U.S.C. § 1955(b)(3) (1976) (illegal gambling); 18 U.S.C. § 1961(2) (1976) (racketeering influenced and corrupt organizations); 28 U.S.C. § 1332(d) (1976) (defining "state" for purposes of diversity jurisdiction). Significantly, too, in *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970), the Supreme Court refused to include Puerto Rico within the term "state" for purposes of a direct appeal under 28 U.S.C. § 1254(2).

Congress's language in 18 U.S.C. § 922(a)(2)(C) also reveals its intent on this issue. Section 922 is a firearms statute that parallels parts of § 1202. The two sections were adopted simultaneously as part of Pub.L. No. 90–351. Section 922 appears in Title IV, and § 1202 appears in Title VII. In § 922(a)(2) Congress made it unlawful for a dealer to ship a firearm in interstate commerce to anyone other than licensed importers, manufacturers, dealers, or collectors, with certain exceptions. One of the exceptions, § 922(a)(2)(C), reveals that Congress did not in this context view Puerto Rico as a state, for Congress provided:

> (C) nothing in this paragraph shall be construed as applying in any manner in * * * the Commonwealth of Puerto Rico * * * differently than it would apply *if* * * * *the Commonwealth of Puerto Rico* * * * *were in fact a State of the United States* (emphasis added).

In short, we have a statute whose plain language omits Puerto Rico from its coverage; we have no useful legislative history on the point; we have express recognition in another, simultaneously adopted firearms statute that Congress did not consider Puerto Rico to be a state; and we have several instances in other statutes where, when Congress did wish to include Puerto Rico as a "state", it employed clear, simple language to signal its intent. In these circumstances we conclude that Congress did not intend a conviction in a Puerto Rican commonwealth court to serve as a predicate to culpability under § 1202(a)(1).

Even if we were not fully satisfied as to Congress's intent, we would be unwilling judicially to add Puerto Rican commonwealth courts to the terms of § 1202(a)(1). Rather, we would defer to the rule of construction—applied to this very statute in a variety of contexts, *see, e.g., United States v. Bass*, 404 U.S. at 347, 92 S.Ct. at 522; *United States v. Marino*, 682 F.2d 449, 454 (3rd Cir.1982); *United States v. Burton*, 629 F.2d 975, 978 (4th Cir.1980), *cert. denied*, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981)—which requires that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Bass*, 404 U.S. at 347, 92 S.Ct. at 522, *quoting Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952) ("... when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite"). *See also Callanan v. United States*, 364 U.S. 587, 602, 81 S.Ct. 321, 329, 5 L.Ed.2d 312 (1961) (Stewart, *J.*, dissenting).

Underlying this rule of lenity are important constitutional principles that require Congress to define criminal activity with specificity.

This practice [of resolving questions concerning the ambit of a criminal statute in

**40**

favor of lenity] reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited. Thus, to ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions that are not " 'plainly and unmistakably' " proscribed. *United States v. Gradwell,* 243 U.S. 476, 485 [37 S.Ct. 407, 410, 61 L.Ed. 85] (1917). (other citations omitted).

*Dunn v. United States,* 442 U.S. 100, 113, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979).

Since Congress did not speak with "special clarity" as to whether § 1202 applies to felons convicted in Puerto Rican commonwealth courts, we "must decline to impose punishment" on Angel Diaz. The judgment of conviction is therefore reversed, and the action is remanded to the district court with a direction to dismiss the indictment with prejudice.

PIERCE, Circuit Judge, (dissenting):

I do not agree with the majority's ruling. The intent of Congress can be reasonably inferred from Congress' evident broad concerns in enacting the Omnibus Crime Control and Safe Streets Act of 1968. See *Lewis v. United States,* 445 U.S. 55, 63, 100 S.Ct. 915, 919, 63 L.Ed.2d 198 (1980) ("Section 1202(a) was a sweeping prophylaxis . . . against misuse of firearms."); *Scarborough v. United States,* 431 U.S. 563, 572, 97 S.Ct. 1963, 1967, 52 L.Ed.2d 582 (1977) ("The legislative history [of Title VII] . . . further supports the view that Congress sought to rule broadly—to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.' ").

I would, therefore, adopt an expansive reading of § 1202(a)(1) in interpreting the issue presented herein and, thus, I would affirm the district court's ruling.