**MABEL DALE INGVOLDSTAD, by her Attorney-in-Fact, DALE I. MEYER, Plaintiff**

v.

**KINGS WHARF ISLAND ENTERPRISES, INC., Defendant**
and
**CHASE MANHATTAN BANK, N.A., Intervenor**

Civil No. 1983/36

District Court of the Virgin Islands

Div. of St. Croix

September 6, 1984

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for plaintiff*

JEAN–ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for defendant*

JOHN F. JAMES, ESQ., Christiansted, St. Croix, V.I., *for intervenor*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

This case is before us on the motion of the plaintiff. She seeks, pursuant to Fed. R. Civ. P. 60(b)(4), to vacate the judgment entered herein, on the ground that it is illegal and void. The plaintiff makes a strong argument that certain actions taken by the Court during the course of proceedings and in the final judgment resulted in a void judgment. Because of this, she maintains, she has an absolute right to have the judgment vacated. We have carefully reviewed her assertions and the case law involved, and we disagree. The judgment was not void, and the motion will be denied.

### I. FACTS

In reciting the background of this case, we will note only those facts necessary to decide the motion filed by the plaintiff. For a full recitation of the facts, reference can be made to the memorandum opinion filed herein at 19 V.I. 624 (D.V.I. 1983).

The plaintiff, as lessor's successor in interest (hereafter "Ingvoldstad"), brought this action to regain possession of the King Christian Hotel in Christiansted. As the jurisdictional basis of her action, she cited 4 V.I.C. § 32 (1967) and 28 V.I.C. § 782 (1975) which give this court general original jurisdiction, and more particularly, jurisdiction over a forcible entry and detainer case such as Ingvoldstad is pursuing in this case.

The lease agreement, which is the crux of this controversy, contains the following language concerning arbitration:

27. *ARBITRATION.* In the event that any dispute or controversy shall arise hereunder, the matter shall be submitted to arbitration. The arbitration shall be conducted as follows: Each party shall appoint an arbitrator, and the two arbitrators so appointed will select a third arbitrator. The three arbitrators will forthwith make a determination of the dispute, or a determination of the renegotiated rental, and their decision will be binding on the parties hereto.

In response to the lawsuit, the defendant, successor in interest to the lessee (hereafter "KWIE"), moved to have the matter referred to arbitrators pursuant to this arbitration clause. Ingvoldstad, conceding the existence of the clause, opposed the referral on the grounds that KWIE had waived the right to arbitration by its default and delay.

On March 4, 1983, we rejected Ingvoldstad's argument, stayed proceedings, and referred the matter to arbitration. However, we placed certain limitations on the arbitrators, which made them fact finders. It was left to the Court to determine whether a default, if any, found by the arbitrators, rose to the level requiring termination of the lease.

Each of the parties selected an arbitrator, and when the arbitrators delayed in naming a third arbitrator, we entered an order naming the final member of the panel. No objection was raised to this order. The arbitrators then proceeded to conduct several days of hearings, took testimony, received other evidence, and, on May 17, 1983, filed Findings of Fact with the Court.

Thereafter, the Court entered an order permitting "any party desirous of submitting any motion, or memoranda on the law of the case" to file such motion or memoranda before the Court took any further action. (Order, May 18, 1983). Both parties took advantage of this order and filed memoranda. Ingvoldstad filed a comprehensive 27-page memorandum with attachments, which raised no issue concerning the procedure followed by the Court in its reference to the arbitrators, but asked for a decree in her favor.

Thereafter, on August 2, 1983, the Court entered its Memorandum Opinion and Judgment. On the basis of the Findings of Fact of the arbitrators, and applying principles of equity, termination of the lease was rejected and KWIE was directed to take curative measures.

Ingvoldstad appealed to the United States Court of Appeals for the Third Circuit, arguing:

1. The trial court misapplied controlling equitable standards;
2. The trial court lacked subject matter jurisdiction to compel arbitration under the federal Arbitration Act (9 U.S.C. § 1 et seq.) (hereafter the "Act");
3. The court could not make findings of its own without taking testimony; and
4. The court erred in rejecting an award of attorney's fees to Ingvoldstad.

The Third Circuit Court of Appeals affirmed the District Court by judgment order, Ingvoldstad v. Kings Wharf Island Enterprises, Inc., 734 F.2d 5 (3rd Cir. 1984). The appeals court added this footnote to the order:

> The parties have not raised the propriety of the district court's limited reference to the arbitrators. Thus, we do not decide that issue in resolving this appeal.

The mandate of the Third Circuit, which ended its jurisdiction over the matter, was forwarded by the clerk of that court on May 22, 1984.

On July 26, 1984, Ingvoldstad filed a motion pursuant to Fed. R. Civ. P. 60(b)(4) to vacate the judgment entered by the Court, claiming that the judgment is void as a matter of law. She cited several grounds therefore:

1. Once the Court decided the parties must arbitrate, the entire dispute should have been sent to arbitration as provided in the agreement. Failure to do so resulted in a void judgment.
2. The Court, by preventing the arbitrators from rendering a decision on the dispute, was left with nothing to "confirm". Entry of the Court's own "award", or judgment, based on the findings of the arbitrators, resulted in a void judgment.
3. The Court had no authority to enter judgment in the absence of a provision for such entry in the arbitration agreement and a motion to confirm by a party. The Court's actions thus resulted in a void judgment.

On the grounds cited above, according to Ingvoldstad, the Court lost subject matter jurisdiction over the dispute, and any judgment entered thereafter was illegal, and subject to attack under Fed. R. Civ. P. 60(b)(4) at any time.

## II. DISCUSSION

We must include in a discussion of the Ingvoldstad motion (1) the manner in which Ingvoldstad brought the case before the Court and

her attitude toward the Court's procedural rulings; (2) the invocation of the Act by KWIE to force arbitration and the actions taken by the Court in furtherance of the Act; and (3) whether the Court's actions resulted in a void, or illegal judgment. In the discussion which follows, there may be a repetition of the factual background already stated herein, but it will be helpful to the application of the facts to the legal points under review.

## A. *Initiation of the Action by Ingvoldstad*

This case is unique in that the challenge to the judgment is not made by a defendant who was forced into court by a plaintiff who had invoked the Court's jurisdiction. Rather, it is the plaintiff who, citing this Court's general original jurisdiction, seeks to vacate a judgment considered void for lack of the very subject matter jurisdiction she originally cited as the basis for the complaint.

Subject matter jurisdiction was lost, Ingvoldstad argues, because the Court acted illegally in failing to follow the dictates of the Act.

It must not be overlooked, however, that this Court's jurisdiction is unique as well. We sit as the court of general jurisdiction for the Virgin Islands under the authority of Section 22 of the Revised Organic Act of 1954, 48 U.S.C. § 1612 (1976). That same section also defines our jurisdiction as a federal court.

Ingvoldstad does not challenge our general jurisdiction to hear the case she filed. Rather she says that once the Court permitted invocation of the arbitration clause in the lease, and submission of the matter to the arbitrators, we lost our subject matter jurisdiction. Any judgment entered thereafter, she contends, was illegal, and thus void.

All of this leads us to consideration of the relationship of the Act to this case.

## B. *Invocation of the Federal Arbitration Act*

Upon being served with the Ingvoldstad attempt to dispossess it, KWIE responded with a motion invoking the Act. Any issue as to whether this District Court has jurisdiction under the Act was put to rest in Econo-Car International, Inc. v. Antilles Car Rental, Inc., 11 V.I. 258, 499 F.2d 1391 (3d Cir. 1974). A comprehensive discussion of the Act's applicability to the District Court of the Virgin Islands can be found in Sewer v. Paragon Island Homes, Inc., 9 V.I. 290, 351 F.Supp. 596 (D.V.I. 1972).

What KWIE sought was a stay of proceedings and a referral of the matter to arbitration under the agreement of the parties, pur-

suant to Section 3 of the Act.[1] The Court heard argument and received memoranda, then granted the stay and referred the matter to arbitration. But certain limitations were attached to the breadth of the arbitration, and the Court retained jurisdiction to determine whether, on the basis of the findings of the arbitrators, the lease should be terminated.

This, according to Ingvoldstad, is where the Court committed its first error. She argues that if the Court decided to invoke Section 3 of the Act, it should have referred the entire dispute to the arbitrators, leaving them to issue a decision or "award". By limiting the area of concern for the arbitrators, Ingvoldstad asserts that the Court prevented the arbitrators from rendering a binding arbitration decision in accordance with the clause in the lease agreement. For purposes of deciding this motion, we will concede that it is the agreement, and not the Court, which defines the parameters of the arbitration under Section 3.

This error was compounded, she adds, when the Court entered a final judgment after receipt of the findings from the arbitrators. Since there had been no "award", and no provision in the arbitration clause for entry of judgment by a Court after conclusion of the arbitrators' efforts, no judgment should have been entered. Thus, she submits, the Court had no authority to enter judgment under Section 9 of the Act.[2] Section 9 of the Act provides that such a judgment may be entered by a District Court only if provision for entry is made in the agreement, and if a party makes a motion for confirmation of the award.

---

[1] Section 3 provides in full:

§ 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

[2] Section 9 provides in pertinent part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of this title.

There is no question that the arbitration clause in the lease only provided that the result would be "binding" upon the parties. There was no specific provision for entry of judgment confirming the arbitrators' decision.

Before proceeding further, we note that Ingvoldstad comes late to her arguments of error on the part of the Court. She originally opposed any submission of the matter to arbitration, not because there was no agreement to arbitrate, but because she considered that KWIE had waived that right by delay and default. But once the Court directed arbitration in the form that it did, Ingvoldstad raised no further objections to the proceedings.

She did not object to how the Court framed the issues for the arbitrators. Upon the receipt of the arbitrators' findings, the Court invited the parties to submit any motion or memoranda on the law of the case before further action was taken. This was a clear opportunity for any challenge whatever to the Court's authority.

Ingvoldstad did not take that opportunity to question the Court's authority to (1) make a limited referral to the arbitrators or (2) to enter a judgment based on the arbitrators' findings. Rather, she submitted a 27-page memorandum with attachments. Based on the arbitrators' findings which were extensively reviewed in her memorandum, she urged that she was "entitled to a decree" finding that the termination was valid and she was entitled to repossession of the premises. (Plaintiff's Memorandum of Law, page 27, June 27, 1983.)

Therefore, while she made no formal motion to confirm the findings of the arbitrators, Ingvoldstad strongly urged the entry of a "decree" in her favor on the grounds that the arbitrators' findings militated in that direction. This was unquestionably an invitation to the Court to enter judgment on the basis of the arbitrators' findings, albeit in her favor.

But, conceding the possibility of error in the manner of referral to the arbitrators, did the Court also err in entering judgment? There is a clear line of cases which holds that even though there is no express-language in the arbitration clause permitting entry of a judgment on an award, permission can be implied from language which makes an award "binding and final". In the case at bar, it was agreed that the decision of the arbitrators would be "binding". The word "final" does not appear.

Ingvoldstad cites Varley v. Tarrytown Assoc., Inc., 477 F.2d 208 (2d Cir. 1973) for the proposition that if the parties did not expressly agree to entry of a judgment, there is no judicial authority

to enter such a judgment after arbitration. But this ignores several later cases which distinguish Varley. See Milwaukee Typographical Union No. 23 v. Newspapers, Inc., 639 F.2d 386, 389–90 (7th Cir. 1981); Kallen v. District 1199, National Union of Hospital & Health Care Employees, 574 F.2d 723, 725 (2d Cir. 1978); I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 426–27 (2d Cir. 1974).

These cases discuss whether the consent to entry of judgment must be explicit in the agreement, or can be implied from the language and behavior of the parties. They opt in favor of permitting entry of judgment based on implicit language and the conduct of the parties.

We recognize that the clause before us only requires that the arbitrators' decision be "binding" while the cases cited involve agreements that the decision would be "binding and final". This should not be fatal to our reasoning, especially when considered in conjunction with the conduct of Ingvoldstad after receipt of the arbitrators' findings. This conduct clearly suggests that she expected entry of a judgment, and urged that the judgment be in her favor. Rather than exercise her right to challenge the Court's authority to proceed as it did and as it proposed to do, she explicitly urged entry of a "decree" in her favor. Thus did she ask the Court to put its judicial seal on the "binding" nature of the arbitration.

This result is no different from that reached by Circuit Judge Learned Hand in Murray Oil Products Co. v. Mitsui & Co., Ltd., 146 F.2d 381, 383 (2d Cir. 1944). Writing for the Court, he held that where the parties resort to arbitration and there is no objection to the procedure, it can be construed as an agreement to abide by the result and to entry of the award, notwithstanding that the agreement to arbitrate did not contain an authorization for entry of a judgment.

A remarkably similar situation was faced by the court in T & R Enterprises v. Continental Grain Co., 613 F.2d 1272, 1279 (5th Cir. 1980). In that case, the plaintiff started the action, resisted arbitration, but was ordered to arbitrate, after which the court entered judgment confirming the award. Plaintiff then appealed, claiming the court lacked jurisdiction to enter the award as a judgment because of lack of the necessary language in the agreement permitting the particular court to enter judgment. The appeals court said:

> So, too, here the power of the federal court was invoked by T & R when they initially filed the complaint on these contracts in

that jurisdiction. We conclude that once invoked, the power of that court to enter a judgment on the arbitration award which was an outgrowth of the original action was sufficient to satisfy the jurisdictional requirements.

Id. at 1279.

■ We hold, on the basis of all that has been said, that notwithstanding possible procedural defects in submitting the matter to arbitration and entering judgment on the findings of the arbitrators, there was a clear waiver by Ingvoldstad of any such defects by her failure to object. Indeed, there was more than a clear waiver. She urged the Court to enter judgment. Her only quarrel then was with what was contained in the judgment itself.

Unless the Court's judgment is void, thereby having no effect, Ingvoldstad cannot at this time object to a judgment that she took part in fashioning. Whether the judgment is void is the next issue we discuss, for Ingvoldstad asserts that the Court did not "confirm" the award of the arbitrators, but rather, made an award itself having adopted the findings of the arbitrators. This, in her view, together with the manner of referral to the arbitrators in the first place, resulted in a void judgment.

## C. *Is the Judgment Void?*

The essence of Ingvoldstad's motion to vacate is that the Court exceeded its authority under the Act and as a result its judgment is void for lack of subject matter jurisdiction. Her motion is based on Fed. R. Civ. P. 60(b)(4). That subsection provides that a court may relieve a party from a final judgment if "the [final] judgment is void." There are no time limits involved in such a motion except that it must be filed within a "reasonable" time, and without a doubt Ingvoldstad has acted promptly.

■ Every court of general jurisdiction has power to determine whether the conditions essential to its exercise of jurisdiction exist. Texas & Pac. Ry. Co. v. Gulf, C & S.F. Ry. Co., 270 U.S. 266, 274 (1925). This case was cited by In re Trimble, 497 F.2d 103 (3d Cir. 1973) where the court noted:

Furthermore, even if the court erred in its assumption that it had jurisdiction to pass upon the claims, its judgment would not be void, but only in error and therefore, if not challenged on appeal, it would become final and immune from collateral attack. (Case citations omitted.)

138

Id. at 109.

We must decide whether our actions resulted in a void judgment because of the total absence of subject matter jurisdiction, or a judgment based on the erroneous exercise of our jurisdiction. If the former be the case, we must vacate the judgment. If it be the latter, the judgment will stand.

At 7 J. Moore, Moore's Federal Practice, 60.25(2), at 60.226–27 (2d ed. 1983), we find the following description:

> By jurisdiction over the subject matter the cases mean that the court must have jurisdiction or power to deal with the class of cases in which it renders judgment. A federal district court, or a court of general jurisdiction, normally has jurisdiction to determine its jurisdiction over the subject matter whenever it is possessed of the requisite jurisdiction over the parties or res that is warranted by the type of judgment rendered, and its decision on this matter is not subject to collateral attack. While a "court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators" there "must be admitted, however, a power to interpret the language of the jurisdictional instrument and its application to an issue before the court."

Citing Stoll v. Gottlieb, 305 U.S. 165, 171 (1938).

Moore points out that it is a rare case where a court of general jurisdiction will render a void judgment. He notes:

> [I]f a court has the general power to adjudicate the issues in the class of suits to which the case belongs then its interim orders and final judgments, whether right or wrong, are not subject to collateral attack, so far as subject matter jurisdiction is concerned.

Id. at 229.

■■ We believe the orders and judgment entered herein, even if incorrect as Ingvoldstad claims, were "erroneous" and not "void". Certainly Ingvoldstad concedes this Court's general jurisdiction. It is also clear that we had authority to refer the matter to arbitration under Section 3 of the Act, and to enter judgment under Section 9 of the Act. That the method used in exercising that authority was in error, as Ingvoldstad argues, may well be true. But, given the authority to enter such orders and the final judgment, the erroneous exercise of that jurisdiction did not render the judgment void. As held in Marshall v. Board of Education, Bergenfield, N.J., 575 F.2d

417, 422 (3d Cir. 1978), a judgment is not void and is therefore not within the ambit of Rule 60(b)(4) simply because it is erroneous. Marshall cites with favor from Lubben v. Selective Service System, Local Board No. 27, 453 F.2d 645 (1st Cir. 1972) and, at page 422, quotes from Lubben as follows:

> A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void. (Citations omitted.)

■ This holds true where a court errs in construing its statutory grant of authority, and such jurisdictional error does not render the judgment void within the meaning of Rule 60(b)(4). See Kansas City Southern Ry. Co. v. Great Lakes Carbon, 624 F.2d 822, 825 (8th Cir.), cert. denied, 449 U.S. 955 (1980).

In a case dealing directly with the powers of the district court in arbitration matters, it was held that the arbitration clause merely limited the scope of review rather than depriving the court of jurisdiction. Else v. Inflight Cinema Int'l., Inc., 465 F.Supp. 1239, 1243 (W.D. Pa. 1979).

■ Finally, Ingvoldstad cannot claim she was denied due process which would render the judgment void. She participated, largely without objection, in all proceedings and had an opportunity to be heard in connection with the orders and judgment of the Court. This lends validity to the judgment. V.T.A., Inc. v. Airco, Inc., 597 F.2d 220, 225 (10th Cir. 1979).

We do not concede that the entry of judgment was erroneous, in view of Ingvoldstad's acquiescence in that action. But if our actions during the presentation of the case were not correct, this review demonstrates that the judgment which resulted was not void. Accordingly, the motion per Rule 60(b)(4) will be denied.

## ORDER

THIS MATTER is before the Court on motion of the plaintiff to

vacate the judgment entered herein. The Court having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED:

THAT the motion to vacate the judgment is DENIED.