**In the Matter of the Arbitration between**
**SHARP ELECTRONICS**
**CORPORATION, Petitioner,**

**and**

**BRANDED PRODUCTS, INC.,**
**Respondent.**

**No. 84 Civ. 6999 (CBM).**

United States District Court,
S.D. New York.

Dec. 5, 1984.

Wender, Murase & White by Lance Gotthoffer, Peter A. Dankin, New York City, for petitioner.

Law Offices of Stephen P. Cunningham by Geoffrey H. Lewis, New York City, Shaddox, Compere, Gorham & Good by Jo Chris Lopez, San Antonio, Tex., for respondent.

## OPINION

MOTLEY, Chief Judge.

Petitioner Sharp Electronics Corporation ("Sharp Electronics") seeks an order to compel respondent Branded Products, Inc. ("Branded") to arbitrate in New York City disputes arising from a distributorship agreement between the two parties. It also seeks to stay a Texas court proceeding between the two parties which was commenced by Branded. A third party, Charles B. Allen, Inc. ("Allen"), is also a defendant in the Texas proceeding. Sharp Electronics is a New York corporation with its principal place of business in New Jersey. Branded is a Delaware corporation with its principal place of business in Texas. Allen is a Texas corporation with its principal place of business in that state.

Respondent Branded has moved to dismiss the petition on grounds that this court lacks subject matter jurisdiction. It also seeks to stay arbitration on the grounds that an amended complaint in the Texas action eliminates all contract disputes and the contract requiring arbitration was a contract of adhesion. For the following reasons, respondent's motions to dismiss the petition and to stay arbitration are denied and petitioner's request for an order compelling arbitration is granted.

## FACTS

Petitioner Sharp Electronics and respondent Branded entered into a distributorship agreement which gave Branded the right to sell Sharp Electronics' products. Paragraph 20 of this agreement prepared by Sharp Electronics provides:

> This Agreement and performance hereunder shall in all respects be governed by the laws of the State of New York. Any controversy or claim arising out of or relating to this Agreement or a breach hereof, shall be settled by arbitration in New York City, New York, in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

On September 4, 1984, respondent commenced an action in a Texas state district court against Sharp Electronics and Charles B. Allen, Inc., seeking to recover damages for breach of contract, breach of warranty, and violation of the Texas antitrust laws by petitioner. The complaint further alleged that Allen intentionally and willfully sought to induce Sharp Electronics to terminate its contract and business relationship with Branded. Petitioner then commenced this proceeding on October 2, 1984, seeking to compel arbitration. Respondent moved to dismiss the petition on October 10, 1984, and to stay arbitration on October 24, 1984. It then served an amended complaint in the Texas action, dropping the breach of contract claim, and filed a supplemental motion to stay arbitration in this proceeding.

## MOTION TO DISMISS

Respondent moves to dismiss this action on the ground that there is no diversity jurisdiction between the parties. Respondent acknowledges that diversity does exist between Sharp Electronics and it. It argues, however, that since no diversity exists between Allen, the other defendant in the Texas action, and it, this court lacks subject matter jurisdiction. Respondent contends that Allen also should be a petitioner in this action. Respondent's argument is erroneous. Allen need not be a party to this proceeding. The Supreme Court has stated:

> if [petitioner] obtains an arbitration order for its dispute, the [respondent] will be forced to resolve these related disputes in different forums. That misfortune, however, ... occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to the arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not the arbitration agreement. If the dispute between [petitioner] and [respondent] *is* arbitrable under the Act, then the [respondent's] two disputes will be resolved sep-

arately—one in arbitration, and the other (if at all) in state-court litigation.

*Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (emphasis in original) (footnote omitted). *See also Hamilton Life Insurance Co. v. Republic National Life Insurance Co.*, 408 F.2d 606, 609 (2d Cir.1969).

## PETITION TO COMPEL ARBITRATION

▮ The United States Arbitration Act, 9 U.S.C. sections 1–14, is applicable in this proceeding since the contract and the arbitration clause in issue evidence "a transaction involving [interstate] commerce." 9 U.S.C. section 2. *Accord, Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967). Federal law applies to issues involving the interpretation, validity and enforceability of the contract regardless of state law or policy to the contrary. *Id.* at 400, 87 S.Ct. at 1804; *Coenen v. W.R. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Banque de Paris et des Pay-Bas v. Amoco Oil Company*, 573 F.Supp. 1464, 1468 (S.D. N.Y.1983); *Klein Sleep Products v. Hillside Bedding Co.*, 563 F.Supp. 904, 906 (S.D.N.Y.1982). *See also Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32.

Section 4 of the Arbitration Act provides in pertinent part:

> [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. section 4. "The permissible inquiry in considering a motion for a stay is narrow, involving only the determination whether the issues in this action are within the terms of the agreement to arbitrate." *Stodolink v. Yankee Barn Homes, Inc.*, 574 F.Supp. 557, 558 (D.Conn.1983), citing *Klein Sleep Products v. Hillside Bedding Co.*, 563 F.Supp. at 905 and *Prima Paint*

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 404, 87 S.Ct. at 1806.

▮ Respondent, in its motion to stay arbitration, argues that although the contract signed by the parties contained an arbitration clause, the agreement was a contract of adhesion. Respondent contends that it had no choice but to accept the terms of the contract and the arbitration clause if it wanted to sell the petitioner's products. Courts, in defining the scope of judicial power under the Arbitration Act, have held allegations that the contract containing the arbitration clause was unconscionable or a contract of adhesion is an issue for the arbitrator to decide and not the court. *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith v. Haydu*, 637 F.2d 391, 398 (5th Cir.1981); *Janmort Leasing, Inc. v. Econo-Car International, Inc.*, 475 F.Supp. 1282, 1286, 1289–1292 (E.D.N.Y.1979). *Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 403–404, 87 S.Ct. at 1805–1806 (issue as to fraud in the inducement of contract generally for arbitrator to decide).

It has been held that the court may consider a challenge to the validity of the arbitration clause as opposed to the contract before ordering arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 403–404, 87 S.Ct. at 1805–1806 (claim that arbitration agreement result of fraud in the inducement may be considered by court); *E.F. Hutton & Co. v. Schank*, 456 F.Supp. 507 (D.Utah 1976) (where validity of both arbitration clause and agreement attacked, court to determine validity of arbitration agreement). But here, even if the validity of the arbitration clause alone were attacked in this action, the agreement to arbitrate in New York disputes concerning the distributorship agreement is not unconscionable. For as one court has noted concerning a similar agreement:

> [A]n agreement to arbitrate in New York [does not pose] unconscionable difficulties. While the parties are thus to utilize a forum and rules of decision different from those they would have had if the

matter had been litigated [in Texas], this is the sort of business arrangement that is fairly left to the contracting parties. Its burdens are not excessive.

*Sewer v. Paragon Homes, Inc.,* 351 F.Supp. 596, 601–602 (D.V.I.1972). Provision for arbitration in a commercial agreement is not uncommon and reasonably could be anticipated. *See Southland Corp. v. Keating,* 465 U.S. 1, ——, 104 S.Ct. 852, 855, 79 L.Ed.2d 1, 8 (1984) (standard franchise agreement containing arbitration clause); *Klein Sleep Products, Inc. v. Hillside Bedding Co.,* 563 F.Supp. at 905 (arbitration clause in franchise agreement). The arbitration clause in this case is therefore not unconscionable.

■ Respondent also asserts that the issues raised in its amended complaint do not fall within the terms of the arbitration clause. The arbitration clause in the distributorship agreement is broad, covering "[a]ny controversy or claim arising out of or *relating to* this Agreement or a breach hereof. . . ." (emphasis added). The portion of the complaint alleging a breach of warranty of fair dealing states:

> In connection with the distributorship agreement and the sale of goods to [Branded], . . . Sharp expressly and/or impliedly warranted that it would be fair in all of its dealings with [Branded], would not terminate the agreement without good cause, and would provide adequate support for the sale of said products.

Pursuant to the language of its own amended complaint, respondent's breach of warranty claim relates to the alleged breach of the distributorship agreement. By merely dropping its breach of contract claim, respondent does not prevent the enforcement of the arbitration clause.

The state antitrust law violation alleged by the respondent in its amended complaint in the Texas action is based on the allegation that petitioner and Allen conspired "to restrain trade, reduce supply, increase the price, and otherwise monopolize and engage in horizontal market allocation, in the market of wholesale distribution of carous-el microwave ovens in Texas." It is clear that respondent's alleged damages occurred when the distributorship agreement was allegedly breached. Since the state antitrust cause of action clearly related to the alleged breach of the agreement, the state antitrust claim is within the terms of the arbitration clause.

■ It is the further contention of the respondent that since the action in Texas alleges a violation of the Texas antitrust laws, public policy dictates that arbitration be stayed. Claims that certain provisions of a contract violated the Sherman Antitrust Act or the federal Securities Acts cannot be the subject of arbitration. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *American Safety Equipment Corp. v. J.P. Maguire & Co.,* 391 F.2d 821 (2d Cir.1968). But the Sherman Act was adopted by Congress who could adopt exceptions to the Arbitration Act. A different result follows when a state enactment is in issue. *Southland Corp. v. Keating,* 465 U.S. at —— n. 11, 104 S.Ct. at 861 n. 11, 79 L.Ed.2d at 15 n. 11. The federal policy in favor of arbitration overrides any state policy proscribing arbitration of state law claims. *Stodolink v. Yankee Barn Homes, Inc.,* 574 F.Supp. at 557–559; *Marley v. Drexel Burnham Lambert, Inc.,* 566 F.Supp. 333 (N.D.Texas 1983); *Bache Halsey Stuart Shields, Inc. v. Moebius,* 531 F.Supp. 75 (E.D.Wis.1982).

■ In *Southland v. Keating,* the Supreme Court considered a similar issue, *i.e.,* whether the California Franchise Investment Law could bar enforcement of arbitration agreements under the federal Arbitration Act. The California Supreme Court had found that the state's policy of protecting judicial remedies for franchise investors was patterned after and was consistent with the federal policy underlying the federal Securities Acts. Because claims under the federal Securities Acts are not arbitrable, the California court found that the state statute's invalidation of certain arbitration agreements covered by the federal Arbitration Act was permissible. *Keating v. Superior Court of Alameda*

*County, et al.*, 31 Cal.3d 584, 183 Cal.Rptr. 360, 645 P.2d 1192, 1202–1203 (1982). The Supreme Court stated, however, that Congress could create exceptions to the Arbitration act, but not the state legislatures. 465 U.S. at —— n. 11, 104 S.Ct. at 861 n. 11, 79 L.Ed.2d at 15 n. 11. To allow state laws and policy to establish exceptions to the federal act would be contrary to Congress' intent. "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at ——, 104 S.Ct. at 861, 79 L.Ed.2d at 15. Therefore, were this court to grant respondent's motion for a stay, such a ruling would be contrary to the intent of Congress in passing the federal Arbitration Act. Pursuant to the Supremacy Clause of the United States Constitution, Art. VI, the federal statute preempts any state law or policy. If any exception for a state law claim exists, it is for Congress to provide and not the court.

Accordingly, respondent's motion to stay arbitration is denied and petitioner's request to compel arbitration is granted. Respondent is enjoined from proceeding with the Texas action until arbitration has been completed. *See, e.g., Burger Chef Systems, Inc. v. Baldwin, Inc.*, 365 F.Supp. 1229, 1233 (S.D.N.Y.1973).