**ROBERT A. REMOLE, Plaintiff**

v.

**DANIEL SULLIVAN, AIA, Defendant**

Civil No. 554/1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

January 27, 1981

PAUL HOFFMAN, ESQ., St. Thomas, V.I., *for plaintiff*
SAMUEL HALL, ESQ., St. Thomas, V.I., *for defendant*
FEUERZEIG, Judge

## MEMORANDUM OPINION

Specific enforcement of an arbitration clause is sought, with the decision to enforce or not being complicated by the Virgin Islands' reliance on the restatements of the law. 1 V.I.C. § 4 (1967).[1] The task is made difficult because sections of the Restatement of Contracts on this precise issue conflict with the Restatement (Second) of Contracts (Tent. Draft No. 12, March 1, 1977) (approved May 17, 1977).[2] Because of strong public policies in favor of arbitration and against forum shopping, arbitration will be ordered and this case will be stayed.[3]

The disputed arbitration clause appears in a contract for architectural services between Robert Remole, plaintiff, and Daniel Sullivan, the defending architect.[4] The contract requires Sullivan to design and supervise the construction of a residence for Remole in Estate Chocolate Hole, St. John. Remole claims Sullivan fraudulently induced him into making the contract, breached it and negligently performed his services. Remole seeks damages in the sum of $48,000. Under the contract, all disputes relating to the agreement are subject to a binding arbitration provision, which is "specifically enforceable" under "applicable law."[5]

---

[1] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." See also Varlack v. S.W.C. Caribbean, 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977); Murray v. Beloit, 450 F.Supp. 1145 (D.V.I. 1978), aff'd sub nom. Murray v. Fairbanks Morse, 610 F.2d 149 (3d Cir. 1979).

[2] Tentative Draft No. 12 was approved subject only to editorial revisions and without § 339, which is inapplicable to this case. 54 ALI Proceedings 155 (1977–1978). The Restatement (Second) of Contracts was completed with the approval of Tentative Draft No. 14 on May 17, 1979. 56 ALI Proceedings 301 and 420–421 (1979–1980). Since then the final editing apparently has been completed and only the printing remains. ALI 1980 Annual Report, p. 5. Because the final edited version is not printed, this opinion cites the approved Tentative Draft.

[3] The defendant has filed a Motion to Dismiss for lack of subject matter jurisdiction or failure to state a claim. Fed. R. Civ. P. 12(b)(3) and 12(b)(6), 5 V.I.C. App. I, R. 12(b)(3) and 12(b)(6) (Supp. 1979). Alternatively, defendant moves to stay proceedings until arbitration is completed. There is no basis for claiming this court lacks jurisdiction over the subject matter.

[4] The contract is a "Standard Form of Agreement Between Owner and Architect," Document B131, copyright 1970 by the American Association of Architects, Washington, D.C. 20006.

[5] The arbitration clause appears at Article 11 of the Contract. It reads:

11.1. All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided by arbitration in

■ The "applicable law" of arbitration, however, can have three very different meanings in the Virgin Islands. The first possible meaning is the old common law rule, reflected by the Restatement of Contracts, which bars specific enforcement of an agreement to arbitrate an existing or future dispute. Restatement of Contracts § 550 (1932).[6] In the past, this rule has been applied in the Municipal Court, this court's predecessor.[7] Sigal v. Three K's Ltd., 8 V.I. 464, 466 F. 2d 1232 (3d Cir. 1972). The Restatement (Second) of Contracts replaces the common law's express bar against enforcement with general rules for "Unenforceability on Grounds of Public Policy." Restatement (Second) of Contracts, Chapter 14 (Tent. Draft No. 12, March 1, 1977), 54 ALI Proceedings 72 (1977–1978). These rules require courts to balance the public policies for and against enforcement of an agreement, and establish criteria for applying these rules. Restatement (Second) of Contracts, supra, §§ 320 and 321. The third possible meaning of "applicable law" is federal law. Had this suit been brought in the District Court of the Virgin Islands, the Federal Arbitration Act would be applicable and would require arbitration of this dispute. 9 U.S.C. § 1 et seq. (1976). Econo-Car International, Inc. v. Antilles Car Rentals, Inc., 11 V.I. 258, 499 F.2d 1391 (3d Cir. 1974) and Sewer v. Paragon Island Homes, Inc., 9 V.I. 290, 351 F.Supp. 596 (D.V.I. 1972).[8] The Federal Arbitration

accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

11.2. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

11.3. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

[6] § 550. *Bargain for Arbitration*

Except as stated in § 558, a bargain to arbitrate either an existing or a possible future dispute is not illegal, unless the agreed terms of arbitration are unfair, but will not be specifically enforced, and only nominal damages are recoverable for its breach. Nor is any bargain to arbitrate a bar to an action on the claim to which the bargain relates.

[7] See 4 V.I.C. §§ 71 through 117 (1967), and the Territorial Court Act, 4 V.I.C. §§ 71 through 86 (Supp. 1979), Act No. 3876, Sess. L. 1976, pp. 187–198.

[8] The requested damages being $48,000, the District Court of the Virgin Islands has concurrent jurisdiction to hear this claim. 4 V.I.C. § 76(a) (Supp. 1979).

Act, however, does not apply to the Territorial Court. Sigal, supra. Both common sense and the law, however, cause this court to conclude that it must apply the general guidelines for enforcement stated in the Restatement (Second) of Contracts.

## Using the Restatement (Second) of Contracts

As an approved Restatement, the rules of Tentative Draft No. 12 must be used as the rules of decision by Virgin Islands' courts. 1 V.I.C. § 4 (1967). The mere delay in printing the Restatement (Second) of Contracts does not weaken its authority any more than a court's slip opinions are less authoritative because of the delay in their formal publication in bound volumes.[9] Even if the printing delay perpetuates the new Restatement's status as a tentative draft, there is a persuasive reason for following it. When the Restatement no longer reflects the common law, an accurate statement of the law in a tentative draft should be used as binding authority. Varlack v. S.W.C. Caribbean, Inc., 13 V.I. 666, 684, 550 F.2d 171, 180 (3d Cir. 1977). This is especially true when, as in this case, the court is asked to choose between an anachronism from the 1932 Restatement of Contracts and the tentative draft's accurate expression of prevailing law. Cf. Varlack, supra, 13 V.I. at 685, 550 F.2d at 180, and Murray v. Beloit Power Systems, Inc. 450 F.Supp. 1145 (D.V.I. 1978), aff'd sub nom Murray v. Morse, 16 V.I. 647, 610 F.2d 149 (3d Cir. 1979).

As the tentative draft recognizes, the common law ban on specific enforcement of arbitration has been shattered by legislation throughout the country. Restatement (Second) of Contracts, Introductory Note to Chapter 14 (Tent. Draft, March 1, 1977). Four-fifths of the states have enacted statutes that provide for the enforcement of agreements to arbitrate future disputes.[10] While

---

[9] See note 2, supra. Indeed, if such a delay affected the law of the VIrgin Islands, in some instances, we would have a two year hiatus in the development of our common law as a result of our publishing company's practices.

[10] Along with the Federal government, 51 jurisdictions have enacted legislation on this subject of which 42 enforce agreements for arbitration of future disputes. These jurisdictions are Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, Wisconsin, and Wyoming.

Nine states have statutes that enforce an agreement to arbitrate an existing, but not a future dispute. These states are Alabama, Iowa, Kentucky, Mississippi,

these statutes do not justify or permit judicial enactment of a Virgin Islands arbitration statute, their effect on the common law cannot be ignored.

> This appreciation of the broader role played by legislation in the development of the law reflects the practices of common-law courts from the most ancient times. As Professor Landis has said, "much of what is ordinarily regarded as 'common law' finds its source in legislative enactment." Landis [Statutes and the Sources of Law, Harvard Legal Essays 2131 at 214 (1934).] It has always been the duty of the common law court to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common-law principles—many of them deriving from earlier legislative exertions.

Moragne v. States Marine Lines, Inc., 398 U.S. 375, 392 (1970). Consequently this legislation has all but eliminated the first Restatement's bar to enforcement of arbitration. Cf. Moragne, supra at 390–391. As a result, there no longer is a specific prevailing rule of common law prohibiting the enforcement of agreements to arbitrate. On the contrary, the decision of whether to enforce an arbitration agreement should be guided by the general rules of "enforceability," which permit the enforcement of arbitration "even in the absence of legislation." Restatement (Second) of Contracts, supra. Introductory Note to Chapter 14, p. 48.[11]

### Enforcing Arbitration Based on the Restatement (Second) of Contracts

■ Absent any legislative prohibition on enforcement, the tentative draft requires this court to balance the public interest for and against enforcement, taking into account several factors in each case. Restatement (Second) of Contracts § 320 (Tent. Draft No. 12,

---

Montana, Nebraska, North Dakota, Tennessee, and West Virginia.

Only Vermont prohibits the enforcement of agreements to arbitrate existing and future disputes as reflected in the Restatement of Contracts § 550 (1932). Fairchild v. West Rutland School District, 376 A.2d 28 (Vt. 1977).

[11] The plaintiff argues that 1 V.I.C. § 4 (1967) prevents this court from enforcing the tentative draft because Sigal v. 3 K's, Ltd., supra, is local law to the contrary. However, no tentative draft was before the court when Sigal was decided. Its holding is based solely on the Restatement of Contracts § 550 (1932), Sigal having been decided in 1972, five years before the Tentative Draft was issued in 1977. Likewise, statements that no local law permits arbitration in Econo-Car International v. Antilles Car Rentals, Inc., supra, and Sewer v. Paragon Homes, Inc., supra, are based squarely on the old Restatement and, in fact, cite Sigal.

March 1, 1977). "In weighing the interest in the enforcement of a term, account is taken of (a) the parties' justified expectations, (b) any forfeiture that would result if enforcement were denied, and (c) any special public interest in the enforcement of the particular term." Id.

▮▮▮▮ One of the most persuasive factors favoring arbitration is that it is an alternative to the costly and often lengthy judicial process for resolving disputes. Schenk v. Alberto-Culver Company, 417 U.S. 506, 510–511 (1974), quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. at 1, 2 (1924). Besides speed and economy, the advantages of arbitration include its informality and the ability to coordinate it with other modes of conciliation. Hanes Corporation v. Millard, 531 F.2d 585, 597 (D.C. Cir. 1976). Almost all details of arbitration can be agreed on in advance—its location, the procedural rules and substantive law governing it, and even the language to be used in the hearings. Id. Parties with special needs in technical areas can thus fashion an arbitration process to meet those needs. Moreover, the community as a whole benefits because arbitration helps to ease crowded court dockets. E.g., United Nuclear Corporation v. General Atomic Company, 597 P.2d 280, 305 (N.M. 1979). It is this overwhelming public policy that has prompted legislation nationwide for the enforcement of arbitration agreements, and, of course, the resulting tentative draft. These strong policies favoring arbitration also have been recognized locally by the executive and legislative branches of this government, which expressly authorize the use of binding arbitration in collective bargaining agreements with public employees. Act No. 4440, adopted September 2, 1980 and Virgin Islands Executive Order No. 140-1970, § 11, April 10, 1970. The policy favoring enforcement thus is clear.

▮▮▮▮ Just as clear is both parties' intent to arbitrate any dispute arising out of their contract. The contract states just that and the plain meaning of the words requires a finding that the only reasonable expectation of the parties was to arbitrate their disputes. Restatement (Second) of Contracts, § 228 (Tentative Drafts 1–7, 1973). Even if some reason exists for believing that the plaintiff legitimately expected he could avoid arbitration, the court would have to enforce this clause to avoid inappropriate use of the judicial process. Cf. Restatement (Second) of Contracts, supra, § 320, comment e.

▮▮▮▮ Forum shopping rarely is appropriate, but failure to enforce arbitration would permit and promote this practice

between this court and the District Court.[12] The plaintiff claims $48,000 in damages, which gives both courts the power to decide his claim. 4 V.I.C. § 76(a) (Supp. 1979). By choosing the court in which to file suit, plaintiff either can force arbitration or avoid it. This choice also results in a selection of procedural and evidentiary law. Remole, by filing suit in this court, effectively has chosen to use the Federal Rules of Civil Procedure and Evidence rather than the arbitration rules of the American Arbitration Association, as specified in the contract.[13] The result—the enforcement of two contrary rules regarding arbitration at the local level—is unworkable and unfair. Arbitration clauses, despite strong, well-founded policies in support of their application, will become ambiguous, if not meaningless, when inserted in contracts in this territory. No good reason exists to justify that result.

The sole remaining issue is whether this case should be dismissed or stayed. Consistent with the practice of the District Court, these proceedings will be stayed pending the outcome of arbitration. 9 U.S.C. § 3 (1976) and 5 V.I.C. App. IV R. 7 (1966).

## ORDER

For the reasons stated in the Memorandum Opinion entered this day, it is

ORDERED that the parties shall arbitrate this matter as required by their contract, and it is further

ORDERED that this action is stayed pending the outcome of arbitration.

---

[12] As stated, the District Court enforces arbitration agreements pursuant to 9 U.S.C. § 1 et seq. (1976).

[13] The brevity and simplicity of arbitration procedures are the very reasons a party may bargain to place it in a contract. For example, discovery is rarely available in arbitration because of its time consuming requirements. United Nuclear Corporation, supra, 587 P.2d at 302.