**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**

**v.**

**ROBERT deJONGH and DONNA deJONGH t/a deJONGH ASSO-
CIATES, WILLIAMS–RUSSELL AND JOHNSON, INC.,**

**and**

**deJONGH ASSOCIATES and WILLIAMS–RUSSELL and JOHN-
SON, INC., t/a deJONGH/WILLIAMS, a Joint Venture, Appellees**

D.C. Civil App. No. 92-214

T.C. Civil No. 969/1992

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 7, 1993

BEFORE THOMAS K. MOORE, *Chief Judge*, District Court of the Virgin Islands; STANLEY S. BROTMAN, *Judge* of the United States District Court for the District of New Jersey, Sitting by Designation; JULIO A. BRADY, *Judge* of the Territorial Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.

ROSALIE SIMMONDS BALLENTINE, ESQ., Attorney General (Department of Justice) St. Thomas, V.I., *for appellant*

DAVID H. PITTINSKY, ESQ. (Argued); GILPIN W. BARTELS, ESQ. (BALLARD SPAHR ANDREWS & INGERSOLL), Philadelphia, Pennsylvania, *for appellant*

FREDERICK G. WATTS, ESQ.; JOHN H. BENHAM, ESQ. (Argued) (WATTS, STREIBICH & BENHAM), St. Thomas, V.I., *for appellees*

## OPINION OF THE COURT

Before the Court is an appeal of the Territorial Court's denial of Appellant's application for preliminary and permanent injunction to enjoin arbitration proceedings commenced by Appellees. The ruling of the Territorial Court was issued from the Bench on October 8, 1992 and followed by a supplementary written Order on October 13, 1992. Appellant moved for and was granted an expedited appeal, and oral argument was heard by this Court on December 4, 1992.

## FACTS

Briefly stated, the facts are as follows: In May 1989, the government selected deJongh Associates and Williams-Russell and Johnson, Inc. ("deJongh/Williams," a joint venture), to serve as its Program Management Consultant ("PMC") to manage the government's $330 million capital improvement program. The two parties then executed a "Program Manager Agreement" which set out the terms of their agreement. In January of 1992, the Virgin Islands Bureau of Audit and Control ("VIBAC") issued its first audit report which was followed by the government's notice of partial termination effective June 23, 1992. In June of 1992, VIBAC issued a second draft audit of the capital improvement project,[1] which was followed on June 18, 1992 by deJongh/Williams' notice of termination of the entire contract. Appellees' notice of full termination indicated that they would seek compensation from the government for costs incurred in the early termination pursuant to Article IX, section C of the Program Manager Agreement, which provides for such costs in the event of a termination without cause. On June 25, 1992, the government also issued a notice of full termination, for

---

[1] The VIBAC reports were not made a part of the record, were not before the trial court, and are not before us. Therefore, any statements made by the parties in their briefs concerning the nature or content of these reports have been stricken and have not been considered by this Court.

the reason that "the Joint Venture has committed substantial breaches of certain provisions of the contract."[2]

The government informed Appellees on September 16, 1992 that it was withholding payment for the amounts allegedly due pursuant to Article IX, section A of the Program Manager Agreement for the reasons "set forth in the Virgin Islands Bureau of Audit and Control ('VIBAC') Audit Report . . . issued on August 7, 1992 and the VIBAC Audit report . . . issued on January 16, 1992." On September 14, 1992 Appellees filed a four point Demand for Arbitration with the American Arbitration Association ("AAA"), which was amended on September 22, 1992 to add a fifth demand to resolve the dispute over the government's withholding of payment. Claiming that none of the issues listed in the amended Demand are arbitrable, the government brought an action in the Territorial Court at the end of September seeking a declaratory judgment upholding the validity of its notice of termination and notice of with-

---

[2] Article IX of the Agreement reads, in pertinent part:
A. Right to Withhold
If work under this Agreement is not performed in accordance with the terms hereof, the Government will have the right to withhold out of any payment due to the PMC, such sums as the Government may deem ample to protect it against loss or to assure payment of claims arising therefrom . . . . The Government will immediately notify the PMC in writing in the event that it elects to exercise its right to withhold and the reason for which said right is being exercised. . . .
B. Partial Termination
The performance of work under this Agreement may be terminated by the Government in part, whenever the Government shall deem, (sic) such termination advisable. . . .
C. Full Termination
Either party will have the right to terminate this Agreement with or without cause on 90 days written notice to the other party specifying the date of termination. In the event that the termination is without cause, all costs incurred by the PMC in winding up its operations including expenses incurred with canceled leases, demobilization costs and 15% of the outstanding profit to be earned from completion of pre-approved Projects, remaining to be completed at the time of termination, shall be paid for by the Government. Profit as used herein shall be calculated as 15% of the fees to be received from the services delineated on Exhibit 1.
With cause shall be defined for the purposes of this Agreement as the PMC:
1. persistently or repeatedly refuses or fails to supply enough professional staff to perform the services;
2. is othervise guilty of substantial breach of a provision of this Agreement.

holding, damages in excess of $5.4 million, and a temporary restraining order, preliminary injunction, and permanent injunction to enjoin the arbitration proceeding.

On September 30, 1992, the government filed a motion for a temporary restraining order ("TRO") and a preliminary injunction to enjoin the arbitration. The Territorial Court denied the motion for a TRO, and, after a hearing[3] on October 8, 1992 on both the motion for a preliminary injunction and on Count Five of the Complaint seeking a preliminary and a permanent injunction, denied the government's request for an injunction of the arbitration proceedings. The court at the same time granted deJongh/William's motion for a stay of the court proceedings pending the arbitration. Finally, the trial judge made findings regarding the issues of withholding and termination about which the government had sought a declaratory judgment.

The government appealed the Territorial Court's order denying an injunction, but did not appeal the order granting the stay pending arbitration. Appellees moved to dismiss the appeal. Argument to the Court on the motion to dismiss preceded argument on the merits of the appeal on December 4, 1992, and the Court took the case under advisement.

## ISSUES ON APPEAL

Appellant raises the following issues:

1. Whether the Territorial Court erred in finding arbitrable the dispute between the government and the Appellees concerning the notice of termination and the government's withholding.

2. Whether the Territorial Court erred in finding that the Program Manager Agreement was unconscionable and that the government had improperly exercised its power to withhold.

*Appellees' Motion to Dismiss*

Appellees move to dismiss the appeal on the grounds that (1) the refusal of the Territorial Court to enjoin the arbitration is not a final order, and therefore this Court lacks appellate jurisdiction; or, (2)

---

[3] The proceeding was not an evidentiary hearing. The parties presented and the court heard only the arguments of counsel based on the pleadings filed in the case.

the Federal Arbitration Act prohibits an appeal from an order refusing to enjoin an arbitration; or (3) the Appellant is actually seeking review of a refusal to stay arbitration, an unappealable interlocutory order, rather than review of a denial of an injunction.[4] Each of these arguments will be addressed in turn.

## I. This Court's Appellate Jurisdiction

■ Local Rule 76.1 states that the appellate jurisdiction of this Court "may be had on any basis under which an appeal could be had from the District Court to the Court of Appeals for the Third Circuit." Local Rules of Civil Procedure of the District Court of The Virgin Islands (July 21, 1992). The Courts of Appeals have jurisdiction to hear appeals from final orders of district courts, from interlocutory orders specially certified by the trial judge, and, pursuant to 28 U.S.C. § 1292(a)(1), from interlocutory decisions of district courts "granting, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." Appellees contend that this Court can only consider appeals from final orders of the Territorial Court, and not from interlocutory orders denying an injunction. Appellees base this argument on the theory that the local legislature has not vested this Court with as broad a grant of jurisdiction as Congress has given to the federal Courts of Appeals.

Section 23A of the Revised Organic Act of 1954 established the appellate jurisdiction of this Court and limited it to "the extent now or hereafter prescribed by local law." See also 48 U.S.C. § 1613(a). The Legislature of the Virgin Islands has granted the district court "appellate jurisdiction to review the judgments and orders of the territorial court in *all* civil cases . . . . Upon appeal the district court may affirm, modify, vacate, set aside or reverse *any* judgment or order appealed from V.I. Code Ann. tit. 4, § 33 (Equity 1992) (emphasis added). Remarkably, Appellees argue that section

---

[4] Appellees additionally argue that the Court cannot consider the appeal because Appellant did not also appeal the Territorial Court's grant of a stay pending arbitration. Appellees claim that were we to reverse the denial of the injunction, a situation would be created wherein both the arbitration would be restrained and the Appellant's action in the Territorial Court would be stayed. This argument does not detain us long, however, because the stay order was issued in conjunction with and as a result of the denial of the injunction. Should we find that the denial of the injunction was in error, the matter can be remanded to the Territorial Court with instructions to lift the stay.

33 "provides for appeal only from final judgments and orders" despite the fact that the language of the statute provides for appeals from any order. Appellees ignore the vital fact that the limitation on our appellate jurisdiction to appeals from final orders was established by *judicial* interpretation of section 33 so that the jurisdiction of this Court would mirror that of the federal Courts of Appeals. See, e.g., Archer v. Aero Virgin Islands Corps, D.C. Civil Appellate No. 92-18 (D.V.I., September 28, 1992). Thus, the Legislature of the Virgin Islands has actually vested in this Court *broader* jurisdiction than the U.S. Code provides for Circuit Courts of Appeals, and that broad grant of jurisdiction has been judicially narrowed to match the federal system. Appellees' argument that this Court's jurisdiction is less broad than that of the Third Circuit because the local legislature did not provide as broad a grant of jurisdiction as did Congress in creating the federal Courts of Appeals is without merit.

## II. The Federal Arbitration Act

Appellees' second argument for dismissal rests on the ground that Section 16(b)(4) of the Federal Arbitration Act prohibits an appeal from an order refusing to enjoin arbitration. The Territorial Court, however, ruled that the Federal Arbitration Act ("FAA") does not apply to unincorporated territories (spelled with a lowercase 't') such as the Virgin Islands. Appellees counter that the Act has been held applicable to Guam, another unincorporated territory, and that the use of an uppercase 'T' in the word 'Territory' in the Act did not limit it to incorporated Territories. Kanazawa Limited v. Sound, Unlimited, 440 F.2d 1239 (9th Cir. 1971); but see Muscarelle. Inc. v. American Timber & Trading Co., Inc., 404 F.2d 467 (5th Cir. 1968) (Federal Arbitration Act does not apply to district court of the Canal Zone).

Appellant contends that the capitalization vel non of the letter 'T' makes no difference because the FAA does not apply to proceedings in courts of local jurisdiction such as the Territorial Court. Appellant cites Sigal v. Three K's, Ltd., 456 F.2d 1242, 1243 (3d Cir. 1972) in which the Third Circuit stated that the FAA did not apply to the Municipal Court of the Virgin Islands, the forerunner of the Territorial Court, and Remole v. Sullivan, 17 V.I. 193, 196-7 (Terr. Ct. 1981), in which the Territorial Court reached the same conclusion. In Econo-Car Int'l v. Antilles Car Rental, Inc., 499 F.2d 1391 (3d Cir.

1974), cited by Appellees, the Third Circuit ruled that the FAA applies to proceedings in the District Court of the Virgin Islands, despite ambiguities in the language of the Act regarding whether the District Court of the Virgin Islands is a "district court of the United States." See also Sewer v. Paragon Homes, Inc., 351 F.Supp. 596 (D.V.I. 1972) (FAA applicable in District Court of the Virgin Islands). No case, however, has ever held that the FAA applies in the Territorial Court, our court of local jurisdiction.

Appellees urge the Court to consider that the "substantive" provisions of the Federal Arbitration Act—Sections 1 and 2—can apply in state courts as well as federal courts, citing Southland Corp. v. Keating, 465 U.S. 1 (1984). They argue that written agreements to arbitrate are within the coverage of the FAA if they are contained in a contract evidencing a transaction involving commerce, as that term is defined by section 1 of the Act. Appellees thus contend that the substantive provisions of the Act can apply to cases in the Territorial Court if the case turns on the interpretation of a contract involving commerce. This Court need not reach that question, however, because the Appellant and Appellees explicitly chose Virgin Islands law to govern their agreement.

■■ The Supreme Court established in Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468 (1989), that where parties have agreed upon an explicit choice of law to govern their contract, force and effect should be given to that agreement. State laws chosen by the parties to govern an agreement will only be pre-empted by the FAA where such state laws render agreements to arbitrate unenforceable. See Southland, 465 U.S. at 10 (1984); Perry v. Thomas, 482 U.S. 483, 490 (1987). Thus, "the FAA does not require parties to arbitrate when they have not agreed to do so." Volt Information Sciences at 478, citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219 (1985). Further, the Federal Arbitration Act does not "prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement [citations omitted] . . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Informational Sciences at 478.

■■ The parties in the matter before the Court explicitly agreed in Article VIII, subsection G, that Virgin Islands law would

govern their agreement. Virgin Islands law favors arbitration and agreements to arbitrate are enforceable under Virgin Islands law. Remole v. Sullivan, 17 V.I. at 199; Restatements (Second) of Contracts §§ 178 et seq.[5] Thus, even assuming, arguendo, that the FAA *could* apply to an action in the Territorial Court, a finding we expressly do *not* make here, it would not pre-empt the parties' choice of Virgin Islands law. Because Virgin Islands law applies, the FAA's prohibition on appeals from denials of injunctions on arbitration is irrelevant to this appeal.

### III. The Nature of the Order Being Appealed

■ Appellees also argue that what appears to be an appeal from an order denying an injunction is really an appeal from a refusal to stay arbitration, which is unreviewable, citing Stateside Machinery Co. Ltd. v. Alperin, 526 F.2d 480 (3d Cir. 1975). The ruling in Stateside, which was cited approvingly in Zosky v. Boyer, 856 F.2d 554 (3d Cir. 1988), cert. denied 488 U.S. 1042 (1989), was heavily predicated on the presumption for arbitration in the Federal Arbitration Act, which applied to the contracts in both of those cases. Also distinguishing these cases is the fact that neither case involved an appeal from an order denying a *permanent* injunction on arbitration. In Stateside, the Third Circuit examined the trial court's denial of a preliminary injunction on arbitration and likened it to a simple refusal to stay arbitration because the movant did not seek to enjoin arbitration permanently. The appeal in Zosky was from an order compelling arbitration. The matter at hand is distinguishable factually from Stateside and Zosky in that the trial judge below explicitly denied Appellant's request for a permanent injunction. This order, which cannot be transmuted into a mere denial of a stay, falls soundly within the allowance of section 1292(a) for appeals from orders denying injunctions.

Beyond this distinction, however, lies a more important point addressed somewhat in the preceding section. The Stateside and Zosky cases arose at a time when there was no provision in the Federal Arbitration Act specifically prohibiting appeals from or-

---

[5] The Introductory Note to this chapter of the Restatements of Contracts, "Unenforceability on Grounds of Public Policy," states that the rules therein for determining unenforceability "do not preclude [arbitration agreements'] enforcement, even in the absence of legislation" favoring them.

ders refusing to enjoin arbitration proceedings.[6] Before section 16 of the FAA was enacted, the federal appellate courts were faced with a quandary: when presented with an order denying. a preliminary injunction on arbitration, how should the courts reconcile section 1292's allowance of appeals from denials of injunctions, while at the same time honoring the FAA's strong policy in favor of arbitration? The complex caselaw developed on this issue in the federal courts[7] came to a resolution, at least with respect to the allowability of appeals from denials of injunctions of arbitration, with the enactment of section 16(b)(4).[8]

The issue for this Court, sitting as the appellate court of the Virgin Islands interpreting Virgin Islands law, is whether our jurisdiction to hear appeals from the Territorial Court should include a prohibition on appeals from orders denying injunctions on arbitration. We conclude that it should not. The federal courts' exclusion of orders denying injunctions on arbitration from those orders appealable under section 1292(a) as orders "refusing to grant injunctions" comes as a result of the Federal Arbitration Act, which, as discussed above, has been held not to apply in our local Territorial Court. Unlike Congress, the Virgin Islands Legislature has not codified into law the type of pro-arbitration policy found in the FAA. We recognize that our local courts have favored arbitration for the reason that it often is a more expedient and more efficient method of dispute resolution than litigation. We find that this premise—that arbitration is a more expedient proceeding—is not always the case, however, and should therefore not be the basis for an absolute rule of law barring appeals such as this one.

■ This Court agrees that, in general, arbitration is to be favored. However, where, as here, a party opposes arbitration on

---

[6] Section 16 of Title 9 of the U.S. Code, which includes the provision prohibiting appeals from refusals to enjoin arbitration proceedings subject to the Federal Arbitration Act, became law on November 19, 1988 as part of the Judicial Improvements and Access to Justice Act.

[7] For a good overview of the historical development of the caselaw addressing the issue of the allowability of appeals from orders favoring arbitration, see David Siegal, Practice Commentary, 9 U.S.C.A. § 16 (West 1992).

[8] Because of 9 U.S.C. § 16(a) (3), the issue of appeals from orders compelling arbitration is not as clear. That subsection reads, "[a]n appeal may be taken from a final decision with respect to an arbitration that is subject to this title." It can be argued that orders compelling arbitration are "final" within the meaning of subsection (a) (3) and therefore appealable.

162

the grounds that the issues being put before the arbitrator are non-arbitrable, the likelihood arises that arbitration would lead to duplication, unnecessary expense, and time loss. Were we not to entertain this appeal, the arbitration would go forward and Appellant would not be able to raise its objection on the grounds of arbitrability until the arbitration was completed and the arbitrator's award brought back to court for judicial enforcement. In contrast, this Court can, as it has done here, take the appeal on an expedited basis, and speedily adjudicate whether or not the issues are non-arbitrable. Under this latter approach, arbitration will proceed to the extent that the Court finds that the parties have agreed to it, and the arbitrator's award will not thereafter be subject to attack on the ground of non-arbitrability. If, on the other hand, this Court finds to be non-arbitrable issues that the lower court found arbitrable, then a reversal will save both parties the time and expense of going to arbitration on questions that the parties did not agree to arbitrate.[9]

To summarize our holding in this case regarding our jurisdiction: Pursuant to the Revised Organic Act of 1954 and V.I. Code Ann. tit. 4, § 33, this Court has jurisdiction to hear appeals from any judgment or order of the Territorial Court. For reasons of judicial economy, namely, to avoid piecemeal appeals, the scope of that broad jurisdiction was judicially narrowed in conformity with the practice of the Courts of Appeals (set out at 28 U.S.C. §§ 1292 & 1293) to include only appeals from final judgments or orders, or from or-

---

[9] The procedure we here establish of judicially determining arbitrability before arbitration proceeds is more efficient than prohibiting appeals from denials of injunctions on arbitration, whether the dispute is actually arbitrable or not. Note the extra step that a policy of no appeal would require with an arbitrable dispute: the matter will start in arbitration, go to the trial court on the question of arbitrability, be returned to arbitration, reach the trial court again for enforcement, be appealed and definitively declared arbitrable, and finally be enforced. In contrast, under a rule allowing appeals from orders denying injunctions on arbitration, the arbitrable matter begins in arbitration, is brought to the trial court on the question of arbitrability, is appealed and returned to arbitration, and is finally enforced in the trial court. In the case of a non-arbitrable dispute, as noted above, it is clearly more efficient to determine the non-arbitrability before arbitration proceeds.

Because our policy of first making the judicial determination is the more efficient route whether the matter at hand is actually arbitrable or whether it is not, this policy achieves the goal of efficiency so often extolled in evaluations of arbitration.

163

ders "granting, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions," or from judgments or orders of the trial court that are specially certified for appeal by the trial court judge. Local Rule 76.1. We do not, however, adopt the limitation on appeals created in the Federal Arbitration Act which prohibits appeals from injunctions denying arbitration. In recognition of the rationale behind our local policy favoring arbitration—that is, the efficient resolution of disputes—we hold that where raised, a question of arbitrability will be resolved first, before a potentially invalid and unnecessary arbitration has been initiated and completed.

For the above stated reasons, Appellees' motion to dismiss is denied.

*The Issue on Appeal*

At issue in this case is whether the parties agreed to arbitrate the claims raised by Appellees in their Demand for Arbitration. The Program Manager Agreement in Article VIII, section M.1 provides for arbitration of "claims, disputes and other matters in question between the parties to the Agreement arising out of or relating to provisions in Article VI." Article VI is entitled "Compensation" and deals with payments for services rendered by the PMC. Section D.2 of Article VI reads:

> If any of the previously described payments are not received when due as a result of a dispute between the PMC and the Government regarding the nature or amount of the expense on an invoice, the PMC may refer the dispute to Arbitration . . . . (emphasis added)

*The Demand for Arbitration*

In their Demand for Arbitration, as amended September 22, 1992, Appellees list the following to describe the "Nature of Dispute":

> 1. The Government's failure to make payments in accordance with the compensation terms of the contract. Claimant has submitted invoices in accordance with the terms of the contract and has not received payments, as of this date, for $4,273,305.24 in fees earned for services rendered.
>
> 2. The Government's failure to make timely payments in accordance with the compensation terms of the contract.
>
> 3. The Government' s wrongful withholding of payments due the claimant in violation of the terms of the contract.

4. The Claimant's right to use an agent's lien against Government Property in its possession, to protect its financial interest in being compensated according to the terms and conditions of the contract. Title 1 of the Virgin Islands Code, Section 4 provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

An agent's lien is provided for in the Restatement Second Agency, Section 464. The Claimant intends to avail itself of such relief, in order to secure payment on the sizable amount of money owed for services rendered.

5. The Government's untimely and wrongful invocation of the withholding provisions in the Contract between the parties.

CLAIM OR RELIEF SOUGHT:

1. The immediate payment in full of all outstanding invoices for services plus accumulated interest.

2. The continuation of payment of invoices pending the resolution of the arbitration proceeding as provided for in the terms and conditions of the contract.

3. Payment of the final invoice for services rendered as soon as the invoice is prepared after the affairs of the contract are wound-up. The work under the contract will be completed on or about September 16, 1992 and a final invoice for the termination expenses and other contractual charges has not been prepared. Consequently, the amounts in question are not known at this time but any unpaid amounts will be the basis for a dispute between the parties.

4. Damages for the failure to pay in a timely manner and for the wrongful withholding as described.

The Appellees present these issues for arbitration as disputes between the parties arising out of the Article VI compensation provisions. Specifically, Appellees believe that because the invoices in question have not been paid within thirty days of their presentation to Appellant as required by Article VI sections A.4, B.2, and

C.5, the disputes are subject to arbitration under Article VI, D.2 as "previously described payments [that] are not received when due." See Tr. at 39–40. Appellant maintains that none of the points of dispute listed by Appellees are arbitrable because they are all concerned with the issues of Appellant's withholding and termination under Article IX, and not with compensation issues under Article VI.

*The Decision of the Territorial Court*

The Territorial Court held Appellees' demands to be arbitrable even though resulting from the government's termination and withholding pursuant to Article IX of the Agreement because it found that Article VI issues of compensation were implicated in the dispute. The trial judge took the position that because the government's notice of termination was spawned by VIBAC's reports, and because VIBAC's reports reportedly concerned overbilling,[10] the dispute regarding the notice of withholding concerned "amount of expenses" and was therefore arbitrable as an Article VI claim. The trial court ruled from the bench as follows:

> I find and conclude that it is implicit in it that the whole dispute revolves around billings, vouchers paid and unpaid. The paid ones, which we are told, amount to $5.4 million. The Auditor says there have been all kinds of mischarges and overcharges. And to resolve whether that is correct or not they have to refer to the same billings, the same invoices, that the Auditor went over to arrive at his conclusion. Which to me throws the dispute right into the lap of Article VI.
>
> . . . .
>
> So I'm going to decline to enter any Injunction barring the Joint Venture from proceeding to arbitrate the issue involving vouchers, invoices, billings, overpayments, overcharges, and monies due. Because all of this, and this alone, is the basis of all the actions by the Government.

Tr. at 65–66.

For the reasons stated below, we disagree with the lower court's analysis.

---

[10] No evidence of such overbilling was presented at this hearing.

*Discussion*

██ Under the terms of the Program Manager Agreement, only disputed issues of compensation "regarding the nature or amount of the expense on an invoice" may properly be the subject of arbitration.[11] As explained below, Appellees' demands for arbitration are not based on disputes concerning the nature or amount of expenses on the invoices, and are therefore not arbitrable under the terms of the contract.

Appellees' first demand is for arbitration of $4,273,305.24 in fees earned for services rendered which have been invoiced to the government but not paid. Robert deJongh states in his affidavit that this approximately $4.3 million in unpaid invoices represents work done by Appellees through the end of June 1992, with the last of the invoices having been submitted on July 29, 1992. App. at 179. In September of 1992, Appellant declared in its Notice of Withholding that it was withholding "any and all pending or future payments allegedly due to the Joint Venture . . . . [for the reasons] set forth in the [VIBAC reports]." App. at 70. Neither Appellant nor Appellees suggest that Appellant's failure to pay the $4.3 million is the result of a dispute as to the nature or amount of the $4.3 million invoices. Rather, it is the approximately $5.4 million invoices (that have already been paid by the government) about which the parties are in dispute regarding the nature and amount of the charges. As Appellees stated it,

> [t]he Joint Venture has now invoiced the Government for most of the services performed and expenses incurred under the contract. Affidavit of Robert deJongh, attached as Exhibit 10. The Government has failed and refused to pay the invoices submitted. Nearly all of the monies which remain unpaid, [sic] concern invoices not covered by the audits.
>
> Defs.' Opp'n to Mot. for Prelim. Inj. at 6; App. at 122 [emphasis added].

There is no allegation before us, then, that the $4.3 million in invoices are the subject of a dispute between the parties because of

---

[11] Appellees would have the Court read Article VIII, section M.1, which refers to claims under Article VI being arbitrable, as meaning that all claims having to do with compensation are arbitrable. We reject this reading because to adopt it would be to render meaningless the qualifier "regarding the nature or amount of the expense on an invoice" in section D.2 of Article VI.

their nature or amount. All we know at this juncture is that Appellant has refused to pay these invoices and that Appellee has sought arbitration to obtain their payment. This dispute, solely over the failure to pay, does not fall within the arbitration clause agreed to by the parties in Article VI, D.2. Appellees' second demand flows from the first and, in fact, essentially repeats it without citing the 4.3 million dollar amount of unpaid invoices. Appellees' third demand, and the fifth demand, added by amendment, address the issue of Appellant's withholding which Appellees seek to have declared wrongful. Finally, in their fourth demand, Appellees seek an arbitrator's judgment of Appellees' rights to use an agent's lien under Virgin Islands common law to protect their financial interest. None of these demands presents an arbitrable dispute under the terms of the contract.

Appellant readily concedes that had Appellees sought arbitration of the amounts that the VIBAC reports apparently show were overpaid, this would have been an arbitrable dispute. Tr. at 26. The issues raised by the VIBAC reports concern other billings which the government has already paid and which, according to the parties, total approximately 5.4 million dollars. But Appellees have not demanded arbitration on these payments which are the basis of the government's withholding. Rather, Appellees have demanded arbitration of the approximately 4.3 million dollars in invoices that the government has failed to pay under the provision of Article IX allowing the government to withhold "out of any payment due to the PMC, such sums as the Government may deem ample to protect it against loss . . . ."

The trial court erred in finding that there is no distinction between what would be an arbitrable dispute over expenses and what is a non-arbitrable withholding of payment pursuant to Article IX for the purpose of protecting the government against loss (even though the potential for loss might arise from a dispute over expenses which would be arbitrable). The trial court judge stated:

> As I understand it, they're seeking to arbitrate your right to withhold. And you have no right to withhold unless you can give a reason for it. And the reason you are giving is that the Auditor says that they have been overcharging you. And they are saying, as I understand it, let's go to Arbitration to show

that the Auditor is wrong. And if we show the Auditor is wrong, you have no right to withhold.

Tr. at 55

The error in the above quoted reasoning lies in the fact that Appellees have not demanded arbitration of the previously billed and paid invoices for $5.4 million "to show the Auditor is wrong." Their Demand for Arbitration, as amended, simply does not encompass the issue of the VIBAC reports (i.e. the underlying dispute over $5.4 million). Appellees have instead limited their demands for arbitration to questions revolving around whether Appellant wrongfully exercised its right to withhold under Article IX of the contract. As trial counsel for Appellees stated it, Appellees "are seeking to arbitrate the Government's failure to make payment in accordance with the compensation terms of the contract. They are not entitled, we contend, to withhold anything that is the nature of a defense to a claim." Tr. at 45 (emphasis added).

Appellees' dispute of Appellant's right to withhold is not a proper issue for an arbitrator to resolve under the terms of the Program Manager Agreement. It is our holding that the proper construction of section 1.1 of Article VIII and section D.2 of Article VI limits the scope of arbitrable issues to those disputes arising out of the government's failure to make payments under Article VI because of a dispute concerning the nature or amount of the expenses on the invoice.[12] This is what the parties agreed to by signing the Program Manager Agreement. The withholding, whether validly or invalidly invoked, was done pursuant to Article IX and is therefore not arbitrable under the terms of the contract.

It is the finding of this Court that Appellees' amended demands one, two, three, and five are concerned with payments that have not been made but which, as far as the Court knows, are not dis-

---

[12] At oral argument, Appellees asserted that the arbitration clause in the PMC Agreement broadly encompasses all disputes concerning money, including even issues arising under Article VII, "reimbursable expenses," despite the fact that the arbitration clause in Article VI reads, in part, "[i]f any of the *previously described* payments are not received when due . . . ." Plainly, the reimbursable expenses of the later Article VII cannot be referred to as "previously described." Indeed, Appellees were hard put to identify an example of a dispute between the parties that would *not* be arbitrable under their reading of the PMC Agreement. We reject Appellees' argument that all disputes concerning money are within the arbitrability clause agreed upon by the parties.

puted in nature or amount, and with the government's right to withhold payment under Article IX. These disputes are not arbitrable under the terms of the contract. Number four, which concerns Appellees' right to use an agent's lien, is totally outside the scope of arbitration to which the parties agreed and therefore also not an arbitrable demand. Because Appellees' demands for arbitration are not within the set of specifically defined disputes that the parties agreed to arbitrate, we hold that the Territorial Court erred in refusing the Appellant's request for an injunction on arbitration of Appellees' Demand for Arbitration as amended. Accordingly, we reverse and remand this matter to the trial court with instructions to enter an injunction and lift the stay on the judicial proceedings on Appellant's complaint.[13]

The final issue to be addressed is Appellant's contention that the Territorial Court erred in making factual determinations that (1) the contract was unconscionable in that it allowed "termination with cause" without requiring a specific statement of that cause and (2) that the government's withholding was wrongful because the government did not dispute the performance of work. In addressing the motion for a restraining order and the request in the complaint for an injunction, the court did make these findings concerning Appellant's requests for declaratory relief raised in Counts One and Two of Appellant's complaint. The fact that the trial judge made findings on the merits of these points involving the wrongfulness of the termination and withholding is consistent with our determination that these are non-arbitrable disputes, suitable for decision by the court and not an arbitrator. That aside, however, we vacate the trial court's findings for the reason that they are without any evidentiary support in the record.

---

[13] The matter of Appellant's withholding, which Appellees sought to arbitrate and about which Appellant seeks a declaratory judgment, is, as we have explained, a matter for the courts. Under the language of the Program Manager Agreement, it is for a judge and not for an arbitrator to decide whether Appellant properly or improperly exercised its right to withhold under Article IX of the Agreement. However, beyond the question of the withholding, there may be arbitrable disputes between the parties. Payments described in Article VI that are not paid as a result of a dispute regarding the nature or amount of the expense on an invoice are arbitrable issues under the Program Manager Agreement, and nothing in this opinion should be read to contradict this.

## CONCLUSION

Appellees' motion to dismiss is denied and we properly entertain the merits of this appeal. We hold that the issues raised in Appellees' Demand for Arbitration, as amended, are nonarbitrable under the terms of the Program Manager Agreement entered into by Appellant and Appellees. We also hold that the Territorial Court's statements with respect to Appellant's requests for declaratory relief must be vacated as unsupported in the record below. In sum, we reverse the Territorial Court's denial of an injunction on arbitration, vacate the findings regarding the issues of Appellant's withholding and termination, and remand the entire matter to the Territorial Court with instructions to grant a permanent injunction on the arbitration proceedings as initiated by Appellees' amended Demand for Arbitration, lift the stay on the court proceedings, and adjudicate the issues raised in Appellant's complaint in accordance with this Court's opinion. This decision should not be read as precluding the parties from thereafter submitting to arbitration any remaining disputes which properly fall within the arbitration provisions of their contract as we have construed it.

## ORDER OF THE COURT

AND NOW this 27th day of January, 1993, in accordance with the accompanying opinion of even date, IT IS ORDERED:

THAT Appellees' motion to dismiss is DENIED; and

THAT the judgment of the Territorial Court denying an injunction on arbitration is REVERSED; and

THAT the findings of the Territorial Court on Counts I and II of Appellant's complaint are VACATED; and

THAT the matter is REMANDED to the Territorial Court with instructions to (1) enter a permanent injunction on Appellees' Demand for Arbitration, as amended, (2) lift the stay on the court proceedings initiated by Appellant, and (3) adjudicate the issues raised in Appellant's complaint in accordance with the accompanying opinion.

## MEMORANDUM AND ORDER

This matter is before the court upon appellees' petition for rehearing pursuant to LECi 76.1 and Fed. R. App. P. 40(a). As

grounds for rehearing, appellees contend that the Court erred in its application of legal principles regarding the scope of its jurisdiction and whether the dispute between the parties is arbitrable. Appellant opposes deJonghs' motion, stating that the Court's January 7, 1993 Order was clear and legally sound. In addition, the Government alleges that appellees reiterate the same failed arguments that were rejected by this Court on appeal. We agree.

On January 7, 1993, this Court issued an Order: (1) denying appellees' motion to dismiss the appeal for lack of jurisdiction; (2) reversing the Territorial Court's judgment denying appellant's motion for preliminary and permanent injunction of arbitration proceedings; (3) remanding the case back to the Territorial Court with instructions to enter a injunction on appellees' Demands for Arbitration, since the issues raised are non-arbitrable under the terms of the Program Manager Agreement ("the contract"), and to lift the stay on the judicial proceedings and adjudicate the issues raised in the Government's complaint in accordance with the Opinion accompanying the January 7, 1993 Order. The petition for rehearing is denied for the reasons stated in that Opinion.

Appellees contend that our Opinion can be read to hold that none of the unpaid invoices making up the $4.3 million described in the Opinion can ever be arbitrated. Based on the record before us, there is no suggestion by either party that appellant's failure to pay the $4.3 million is the result of a dispute over the nature or amount of any of those invoices comprising the withheld $4.3 million.[1] Rather, appellant's assertion is uncontroverted that the withholding of those payments was not based on any dispute over the nature or amount of any invoices. Appellees limited their demands for arbitration to questions regarding the right to withhold under Article IX of the contract. (Opinion at 21, referring to appellees' own affidavits and allegations regarding the invoices at issue.) We ruled that a dispute not arising over the nature or amount of an invoice is non-arbitrable under the contract. If the nature or amount of an expense on any of the invoices making up the $4.3 million becomes at issue, then any such invoice would indeed be arbitrable under Article VI of the contract upon proper demand, etc.

---

[1] Also absent from the record are VIRAC Audit reports. Accordingly, appellees' attempt to bring the interpretation of the VIBAC auditors into this case for the first time on appeal is rejected.

Appellees further argue that our decision in this case is inconsistent with and contrary to our earlier ruling in Archer v. Aero Virgin Islands Corp., D.C. Civil Appellate No. 92-18 (D.V.I., September 18, 1992), contending that Archer restricted this Court's jurisdiction to hear appeals only from final orders and judgments. Appellees take the language and holding of Archer out of context. The appeal in that case was attempted from the denial of a continuance, clearly a non-final, non-appealable interlocutory order of the trial court. Since the scope of the provision describing our appellate powers on its face might be read to allow appeals from such orders, we judicially limited our jurisdiction to mirror that of the Court of Appeals. See V.I. Code Ann. tit 4, § 33 and LRCi 76.1. Courts of Appeals can hear appeals from decisions of district courts which are not final orders; Archer merely confirmed that this Court too has that jurisdiction. See 28 U.S.C. § 1292(a)(1).

The other points raised by appellees are also without merit. Accordingly, it is hereby

ORDERED:

THAT appellees' motion for rehearing is denied.